95 So.2d 659 (1957)
Ernest JOHNSON
v.
CALCASIEU PAPER COMPANY.
No. 4426.
Court of Appeal of Louisiana, First Circuit.
June 4, 1957.
Rehearing Denied June 28, 1957.
Writ of Certiorari Denied October 8, 1957.
*660 Gist, Murchison & Gist, Alexandria, for appellant.
Wood & Jackson, Leesville, for appellee.
ELLIS, Judge.
Plaintiff filed this suit for compensation for the maximum amount as the result of an alleged accident received by him on or about May 25, 1955 while employed by the defendant as a laborer, and as a result of which he alleged he suffered total and permanent disability. After trial he was awarded compensation as prayed for and the defendant has prosecuted this appeal.
After a careful consideration of this entire record and particularly the brief on behalf of defendant we find that the able District Judge has thoroughly and correctly discussed the facts as shown by the record and has specifically considered the four defenses to plaintiff's right to recover, and in view of the fact that an examination of defendant's brief filed in this court is a reiteration of the four defenses made in the lower court and there considered, and there being no new arguments advanced by defendants now any specific errors in the lower court shown other than the general contention that the conclusion reached by the lower court was in error, we hereby adopt the opinion of the District Court except as hereinafter shown by footnote and we quote:
"In this workmen's compensation case plaintiff, Ernest Johnson, seeks to recover compensation at the maximum rate for a period not to exceed 400 weeks, for injuries allegedly sustained May 25, 1955 while in the employ of defendant Calcasieu Paper Company, Inc.
"The employment, the hazardous nature thereof, and the $30.00 per week rate for compensation are admitted by the defendant. Defendant also admitted `that on or about the date alleged the plaintiff herein complained to his follow employees of having hurt himself as alleged, and that he reported said accident to his foreman. * * *.'
"At the beginning of the trial the following stipulation was dictated into the record. (Punctuation has been changed from the original record.)
"`It is agreed and stipulated by and between counsel for plaintiff and defendant that the plaintiff, Ernest Johnson, had worked for Calcasieu Paper Company for a period of approximately two years prior to the date of his alleged accident, most of which time he had worked as a counterroll rewinder operator; that during this entire two year period that the plaintiff's work record was satisfactory in all respects.
"`That on May 25, 1955 while he was working for the Calsasieu Paper Company at Elizabeth, Allen Parish, Louisiana, and while in the course and scope of his employment that he said that he sustained an accident to his neck, shoulder and general cervical region. That at this time he was in the course and scope of his employment; that he had a rod or a bar in his hand attempting to turn over a roll of paper weighing approximately 500 pounds and that at this time he was helped and assisted by Earl LaFleur. At the time that they were together trying to move the rolls of paper (Mr. Johnson) immediately told Earl LaFleur that he had hurt his neck or cervical spine area; that within a matter of a few minutes, Frank Gordon, appeared on the scene and that he told Frank Gordon that he had hurt his neck, shoulder or cervical region; that at approximately the same time Monroe Strother *661 who was working a short distance away appeared on the scene and he likewise told Monroe Strother the same thing; that a conversation ensued between Earl LaFleur, Frank Gordon, Monroe Strother and Ernest Johnson at which time they told him he had better report the accident to his foreman; that within a few minutes thereafter or after the conversation that the plaintiff did report in the proper manner the occurrence of the alleged accident to Stewart Willis who was his foreman at that time; that immediately Stewart Willis informed the plaintiff and he went to the company physician (who we believe to be Dr. Martinez at the company clinic; that Dr. Martinez) was a substitute at that time; that no presumption will be created against either party in the failure to produce the witness, Dr. Martinez; that on the next day May 26, 1955, the plaintiff reported to the regular company physician, Dr. Saint, at the company clinic in Elizabeth.
"`That compensation was paid to the plaintiff at the rate of $30.00 a week during the period of May 25, 1955 through and including January 12, 1956 at which time payments were terminated, but that said payments were made subject to no admission of liability on the part of the defendant.
"`That when the plaintiff applied for work at Calcasieu Paper Company that he was asked to sign or to give information as to whether he had had previous accidents. That at the time he was asked if he had had previous accidents he stated that he had had one previous accident to his low back sometime around 1949 or 1950 and that he received a settlement on this claim of $500.00; that, in fact, the plaintiff at that time or prior to that time had actually had three accidents, one being to his low back while working for the Ross Gravel Company in Vernon Parish from which he received a settlement of $500.00; that a second injury to his low back area while working for the Ross Gravel Company approximately 1950 from which settlement he received $2500.00; that he had sustained a third accident while working for a sub-contractor of Crosley Chemical Corporation of DeRidder, Louisiana, during the year 1951 an injury to his head and neck from which he received a settlement of $2000.00 plus $50.00 for medical expenses.'"
"Defense counsel sets forth in its brief that the Calcasieu Paper Company, Inc. defends this law suit on the following grounds, to-wit:
"`1. Defendant maintains, based upon competent facts and information which were not in its possession until after this law suit was filed, that the plaintiff in all probability never sustained any accidental injury while in its employ.
"`2. If the plaintiff did sustain any accidental injury in its employ which either caused the alleged disability complained of, or aggravated a prior existing condition, all of which has been denied, then the defendant contends that the plaintiff received full and proper treatment, and that he had fully recovered from the ill effects of any such disability.
"`3. If the Court should feel that the plaintiff did sustain a disabling injury while in the employ of this defendant, the Calcasieu Paper Company feels and maintains that if the plaintiff is suffering from any residual disabling effects of this injury, same are due entirely to his arbitrary refusal to cooperate with the attending physicians, Drs. Saint and Banks in that he has arbitrarily refused to attempt to do any work of any type or nature whatsoever, and that according to the opinion and testimony of these doctors conservative therapy of this type would not be harmful to the plaintiff, and in *662 fact could materially improve his condition.
"`4. The facts are clearly established to the effect that at the time of his application for work with defendant company, and at the time of the preemployment physical examination given him as a part of regular company policy, this plaintiff deliberately misled the company and the examining physician with respect to the previous injury of almost identical nature which had been suffered by him several years previously to the accident complained of in this law suit; that the plaintiff arbitrarily refused to give the examining physicians to whom he was sent by the defendant company any information with respect to this prior existing disability; that the plaintiff had settled his claim for this previous accident and alleged disability with another company, and at that time had taken the position that he was totally and permanently disabled thereby; and, in short, that all of these actions on the part of the plaintiff should serve as the basis of an equitable estoppel against his claim in this particular instance.'"
"Defendant pitches his defense as to the first and fourth points on the ground that the plaintiff is absolutely unworthy of belief; that in effect plaintiff planned and stated this accident for the purpose of collecting compensation. To substantiate this, defense counsel has pointed to the following and other numerous examples where Mr. Johnson deliberately gave false information.
"(1) Mr. Johnson himself admits that he misinformed Dr. Saint in giving his age as 42 when in fact he was 50 years old at the time of his preemployment physical.
"(2) This Court finds as a fact that plaintiff deliberately refused to report to Dr. Saint during the pre-employment physical two of his prior injuries and workmen's compensation settlements.
"(3) This Court finds as a fact that Mr. Johnson deliberately misled Dr. Banks by failing to report two of his previous disabling accidents.
"(4) This Court finds as a matter of fact that Mr. Johnson deliberately misled Dr. Kingsley by failing to report two of his previous disabling accidents.
"(5) This Court finds as a matter of fact that Mr. Johnson deliberately misled Dr. Reid by failing to report two of his previous disabling accidents.
"(6) This Court finds as a matter of fact that Mr. Johnson deliberately misled Dr. Kirgis by failing to report two of his previous disabling accidents.
"(7) This Court finds as a matter of fact that Mr. Johnson deliberately misled Dr. Sutton by failing to report two of his previous disabling accidents.
"(8) This Court finds as a matter of fact that Mr. Johnson deliberately misled Dr. Pollard by failing to report two of his previous disabling accidents.
"(9) A few days prior to the trial defendant using the discovery law, took Mr. Johnson's deposition, and the record shows that at the trial Mr. Johnson changed his testimony on the very important issue as to the effect of an injury which occurred in 1951 which caused similar injuries to those which are the basis for this suit. This injury was the subject of a workmen's compensation suit filed in 1951 and compromised in 1952.
"(10) Mr. Johnson admits a conviction for making whiskey which resulted in a sentence of several months in the Parish jail.
"(11) Mr. Johnson admits that he was discharged from a job in the laundry at Camp Polk because of gambling and that he was barred from *663 government work for a period of 12 months.
"(12) Mr. Johnson's testimony is at variance with that of Earl LaFleur of Ville Platte, Louisiana, an employee of the Calcasieu Paper Company, Inc. on the point of the taking of a statement from Mr. LaFleur and this Court without reservation believes the statement of Mr. LaFleur.
"All of the above inconsistencies simply cannot be explained by the statement that Mr. Johnson does not understand the questions. The plaintiff impressed me while he was testifying and again when I reread his testimony with the fact that, although uneducated, he is an intelligent individual. A reading of the doctor's depositions will disclose that this plaintiff also impressed three prominent neurosurgeons with his ability to explain himself.
"Notwithstanding all of these instances which as a group must have the effect of discrediting the plaintiff and rendering his testimony unworthy of belief, the fact remains that the plaintiff has much testimony in the record to substantiate his claim that an accident occurred and that he is presently disabled.
"In this connection it is important to review the testimony given by Mr. A. A. Cavanaugh, who adjusts workmen's compensation matters on behalf of the defendant, when he testified by deposition and on cross examination as follows:
"`Q. As far as you know, was he a fairly regular employee or was he one that worked a day and missed a week? A. Regular.
"`Q. Do you know that he was examined or given a pre-employment physical examination by your company physician before he went to work. A. Yes, sir.
"`Q. He was. And I believe he was passed at that time. A. That's correct.
"`Q. Now, do you have a copy of that physical examination report before you? A. Yes, sir.
"`Q. Would you let me see it just a moment. Mr. Cavanaugh, I note from this report that you have just handed me that Dr. Saint on May 1, 1953, found that it was his opinion that Mr. Johnson could do a reasonable day's work. A. That's right.
"`Q. And, therefore, passed him to go to work. A. That's right.' * * *
"`Q. * * * Now, Mr. Cavanaugh, I believe that your company did pay compensation to Mr. Johnson as a result of this accident from May 25, 1955, until January 12, 1956. Would that be correct? A. May 25, 1955, through January 12, 1956.
"`Q. And at that time you terminated compensation because your doctors thought he could go back to work or for reasons of your own. A. That is correct.
"`Q. Mr. Cavanaugh, I believe that during the time that you were paying compensation that, as far as you were concerned, even though the payment of compensation is not an admission of liability, you felt as though that was a legitimate claim, did you not. A. For a time I did.
"`Q. And that only after your doctor said that he thought he was able to return to work did you take the position that he should not be paid * * * A. That's right.'"
"Another matter which is important to this case is the fact that plaintiff is only 5' 6" tall and usually weighs approximately 130 pounds. This physical fact makes it likely that Mr. Johnson could suffer the accident exactly as alleged by him.

*664 "On May 25, 1956, plaintiff went to work at 6:00 A.M. He was not injured until approximately 9:00 A.M. While it is possible that plaintiff injured himself at some time other than while employed, the record in this case leaves me with the impression that when plaintiff came to work on the morning in question he was physically able to do the work. His fellow employees do not even suggest that Mr. Johnson was disabled during the three hours he worked on May 25, 1955 and prior to the alleged occurrence of the accident. In this connection it is significant to note that plaintiff's fellow employees were called as witnesses on behalf of the defendant. There is no question but that plaintiff was disabled after May 25, 1955.
"It is therefore, this court's opinion that although the plaintiff is unworthy of belief, the record shows that he sustained an accident in the course and scope of his employment with the Calcasieu Paper Company, Inc. If there could be any doubt about this conclusion, it is entirely removed by a review of this Court's opinion in the case of Fee v. Calcasieu Paper Company, Inc.[1] together with the opinion of the First Circuit Court of Appeal in the same case which appears at 89 So.2d 434.
"The three neurosurgeons, Dr. Homer D. Kirgis, from Ochsner Clinic, New Orleans, Louisiana, Dr. Claude Pollard, of Houston, Texas and Dr. John B. Sutton of Shreveport, Louisiana, each testified that in their opinion plaintiff was presently disabled from performing manual labor and that this disability would continue for an indefinite period. Of course, their opinion is subject to question because of the fact that Mr. Johnson misled each of them in setting forth his history of prior back injuries. Each of these doctors testified that the patient's history and subjective complaints were important in the forming of their opinion. * * * At the same time the opinion of these neurosurgeons was not changed after they were apprised by opposing counsel of the possibility of prior similar injuries. Since plaintiff consulted three neurosurgeons, it is significant to note that defendant did not see fit to have Mr. Johnson examined by any neurosurgeons. As to Dr. T. E. Banks and Dr. Daniel Kingsley, both orthopedic surgeons of Alexandria, whose opinions were to the effect that plaintiff had recovered, it is noted that both of them hedged by stating, in effect, that Mr. Johnson was only able to work as well now as he could immediately prior to the accident. They made it clear to this Court that prior to the May 25, 1955 accident Mr. Johnson's back was one that would not have passed for hard manual labor.
"This Court is of the opinion that Mr. Johnson is disabled from performing manual labor and that this disability will last for an indefinite period.
"Defendant bases its third defense on the fact that Mr. Johnson was returned to duty by Drs. Banks and Kingsley and refused to cooperate. It was Dr. Banks' recommendation that Mr. Johnson return to light duty. On January 20, 1956, Mr. Johnson returned to the Paper Company and was assigned to his old job with the understanding that Mr. Bloodworth who was replacing the plaintiff would also be doing the same work. There is a great deal of testimony in the record showing that in the opinion of defendant's employees who were working that shift in positions where they could see, plaintiff did not do any work. And further that the plaintiff did not *665 complain of any pain. As a fact Mr. Bloodworth is the one in the best position to know exactly what the plaintiff did. Plaintiff and Mr. Bloodworth both testified that the plaintiff did lift two or three, nine inch rolls and that plaintiff stated he could not do the work. Whereupon Mr. Bloodworth advised plaintiff to simply step aside so that Bloodworth could do the work by himselfand he did. This Court cannot attach a great deal of significance to the fact that plaintiff did not go around informing all of the workers of his pain, for the reason that would certainly be urged by defense counsel and believed by this Court, that such declarations would be entirely self serving.
"It is well settled that a worker will not be required to perform his usual and customary duties when he would suffer pain and discomfort in so doing. Reed v. Calcasieu Paper Company, Inc. [La.App.], 80 So.2d 588. Considering Dr. Banks and Dr. Kingsley's description of plaintiff's weak back and further in the light of the neurosurgeon's certain testimony that this man is disabled, it is not unreasonable to believe plaintiff's complaints of pain. Considering this testimony it cannot be held that plaintiff's present disability is due entirely to his arbitrary refusal to cooperate with the attending physicians.
"As to defendant's fourth defense he is frank to admit that he knows of no case sustaining the defense of estoppel. The estoppel which defendant relies on herein, of course, is that Mr. Johnson is taking advantage of his own refusal to disclose the true facts first during his pre-employment physical and second to the physicians who testified in his behalf. Although the case of Peavy v. Calcasieu Paper Company, Inc. [La.App.], 70 So.2d 755 is one where plaintiff withheld information during his pre-employment physical and yet recovered, the instant case involves more fraud on the part of the claimant. At the same time considering the universally accepted mandate that the Courts are to liberally construe the workmen's compensation act in favor of the employee, this Court cannot recognize the doctrine of estoppel to be used against an employee in the manner suggested by the defendant. Defendant has the opportunity of protecting itself from employees such as the plaintiff by conducting a thorough pre-employment physical and further, by conducting an investigation of its applicants for jobs.
"It is a well settled principle of law in workmen's compensation cases that it is immaterial whether or not the plaintiff was suffering from a latent defect at the time of his employment insofar as his right to compensation is concerned. At section 232 of Malone's Louisiana Workmen's Compensation, it is stated
"`The courts have firmly established the principle that the employer must take the worker as he finds him. The worker who is abnormally susceptible to disability from an accident is entitled to the full protection of the compensation statute, even though the same accident would have caused little or no harm to a healthy worker. It is not important that the diseased or weakened condition might alone have eventually produced disability or death.'"
"For the above reasons plaintiff is entitled to compensation at the rate of $30.00 per week commencing with May 25, 1955, during the period of his disability, not to exceed 400 weeks, subject to credit for compensation paid through January 12, 1956, together with the reservation of plaintiff's right to be refunded medical expenses necessary for his treatment up to a total *666 of $1000.00, less, of course, those already expended for the treatment of the plaintiff. The fees of the physicians for testifying as expert witnesses should be assessed as costs in the following amounts: Dr. Banks, $50.00; Dr. Kingsley, $50.00; Dr. Saint, $50.00; Dr. Reid, $25.00; Dr. Sutton, $35.00 (See Tr. pages 8 and 9); Dr. Pollard, $50.00; and Dr. Kirgis, $75.00. Further the defendant is to pay the costs of these proceedings. The fee of Wood & Jackson, Attorneys, is fixed at the sum of 20% of the compensation collected by the plaintiff as a result of this judgment not to exceed $1000.00."
In addition to the opinion of the learned trial judge, we wish to state that although the defendant practically based its entire defense upon the proposition of plaintiff's lack of credibility and particularly in that he failed to give a true history of former accidents and injuries to the physicians, the defendant only produced a report of Dr. Bradford of Houston, Texas, who examined plaintiff for a 1951 accident. While this report did show practically the same condition existing at that time, we cannot understand why the defendant would not have shown by this doctor and any others who examined plaintiff as a result of prior accidents and injuries that his condition subsequent to the accident of May 1955, which is the basis of his present suit, was no different than previously. The plaintiff produced as a witness Dr. Kirgis of Ochsner Clinic where plaintiff was examined in `51 and he specifically testified as follows:
"Q. Well, would the 1951 injury be of any important clinical significance in this case? A. I felt that it was of importance, because I felt that this represented an aggravation of that injury.
"Q. Well, who treated him here or examined him here in 1951? A. He was examined by Dr. Duncan and by Dr. Echols.
"Q. Is Dr. Duncan still with the Clinic? A. Yes.
"Q. Is he a neurosurgeon or a neurologist? A. No, Dr. Duncan is an orthopedist.
"Q. Were x-rays made at the time of that injury? A. Yes.
"Q. Did you have the benefit of those x-rays in connection with your recent examination? A. Yes, sir.
"Q. Did you personally compare the x-rays taken at that time with the recent x-rays? A. I don't recall that I did right now, but I usually do.
"Q. What I would like to find out, Doctor, is if there were any significant changes in the x-rays pictures, wouldn't you consider that of significance in this case? A. Not insofar as it would alter my opinion regarding the fact that he has a compressed nerve root from an injured intervertebral disc.
"Q. Well, Doctor, you stated that the x-rays which you saw this time were one of the main objective things upon which you based this diagnosis. Now, wouldn't it be significant as to whether or not there were any changes in the x-rays at this time and the x-rays in 1951? A. We know from both x-rays that the man has an injured intervertebral disc. He presents history and findings which mean that he has nerve root compression. The conclusion that one cannot avoid is that the nerve is again compressed by the defective intervertebral disc.
"Q. In other words, Doctor, I judge from your answer to that question that you feel that there is little doubt but what this man suffered a disc injury in 1951. A. The interspace was narrowed at that time, so that we know that the disc was injured.
"Q. So that, if his present complaints are attributable to an accident in May of 1955, in your opinion it constituted an aggravation of the already existing *667 condition. Is that right? A. Yes, sir." (Emphasis added.)
Counsel for plaintiff in brief asks that the fee of Dr. Kirgis be increased from $75 to $100, however, there is no answer to the appeal by plaintiff and we will not consider the request.
For the above and foregoing reasons the judgment of the District Court is affirmed.
NOTES
[1] In the cited case the plaintiff's credibility was not destroyed as was plaintiff's in the case at bar.