TATE, Judge.
Claiming he is totally and permanently disabled, the plaintiff employee sued his former employer for workmen’s compensation benefits. The trial court granted compensation at the rate of $25.27 per week from April 5, 1954, the date of the accident, until March 15, 1955 (less credit for compensation paid), holding that the employment-caused disability had ended by that latter date.
The sole question raised by plaintiff’s appeal concerns whether his disability persisted beyond March 15, 1955.
While the period of prolonged physical rest had produced a cessation of the symptoms of back pain by the date in question, plaintiff strenuously contends that the court should accept the testimony of Dr. G. N. DesOrmeaux, the initial attending physician, who had found the plaintiff free of disabling symptoms in March of 1955 but who found that, as not uncommon in lumbosacral back sprains, the disability resulting from the accident was reactivated from its dormant state by plaintiff’s working and by exertion following his initial discharge by the physicians after the period of initial disability.
Corroborating this physician’s testimony of plaintiff Richard’s continued disability by reason of a residual back condition and of the aggravation into painfulness of a previously asymptomatic arthritic condition is the testimony of Dr. Jack Wick-strom, orthopedist, and of Dr. J. B. Montgomery, general practitioner. All these medical witnesses found plaintiff’s complaints of disabling pain objectively supported by marked involuntary back muscle spasm and by an involuntary restriction of back motion.
Directly contradicting the testimony of these physicians is that of Dr. James Gilly and Dr. G. C. Battalora, orthopedists, who found plaintiff to be free of disability and grossly exaggerating his complaints and who — while noting the manifest muscle spasm and restriction of motion — came to the conclusion that such symptoms were voluntarily produced by plaintiff. This conclusion was based upon the lack of or the moderation in reactions when plaintiff’s attention was distracted from the examination of the back itself. To similar effect was the testimony of Dr. Henry Voor-hies, general practitioner. Dr. Gilly, who had initially found plaintiff disabled in September, 1954, flatly stated his opinion that this employee was completely cured and malingering following March, 1955.
Plaintiff, corroborated by members of his family and a neighbor, first testified that he performed even light duties with pain and that he had been unable to perform any gainful employment since the accident.
Defendant then produced some Pendle-ton detectives who had placed plaintiff under surveillance on various dates between May 3, 1955 and August 15, 1957,[1] *170 and who observed and took films of plaintiff performing fairly heavy farm chores intermittently through October 25 and 26, 1955: picking corn (requiring bending), loading and unloading potato crates off a truck, and plowing with a fair amount of agility. Counsel for plaintiff points out a certain amount of awkwardness manifested by plaintiff in the heavier duties as indicating the duties were performed with difficulty; counsel for defendant ascribes such awkwardness as was indicated as simply usual to a man of plaintiff’s fifty-seven years and as not indicating pain or disability.
Based upon this positive evidence that plaintiff had indeed performed strenuous duties, subsequently on rebuttal admitted by plaintiff to be true despite his previous positive denial that he had done or could do so, and upon defendant’s medical testimony to the effect that plaintiff was malingering and no longer disabled, the trial court limited compensation for disability to March 15, 1955, the date of his initial discharge by the attending physicians. The trial court found plaintiff “recuperated” as of that date and “that such injury as plaintiff may have had at the time of the trial was a subsequent injury, if he was actually disabled and not feigning.” (Italics ours.)
Counsel for appellant correctly contends that if the plaintiff was actually unable to work at the time of the trial because of a disability which was medically related to the initial accident, then in the absence of any evidence as to any other accident the court would be in error in ascribing the present disability to some unshown subsequent injury. For where a continued disability is proven which relates back to the initial accident during the employment, the burden is on the employer to prove that some other accident caused the disability and not upon the employee to prove that no other accident occurred. White v. Calcasieu Paper Co., La.App. 1 Cir., 96 So.2d 621; Fee v. Calcasieu Paper Co., La.App. 1 Cir., 89 So.2d 434; Turner v. Southern Industries Co., La.App. 1 Cir., 88 So.2d 238.
But despite the apparent conflict with such principle of the remark of the trial court above-quoted, the trial court’s reasons for judgment read as a whole indicate that plaintiff’s claim for further compensation was rejected because the court accepted the defendant’s medical experts’ testimony that plaintiff was malingering and because it completely discounted plaintiff’s own credibility. The trial court’s remark as to any possible disability resulting from subsequent injury apparently refers to the testimony by defendants’ specialists that some non-traumatic medical condition might cause some weakness or complaint of pain.
As plaintiff’s able counsel also correctly contends, the reports of the Pendleton operatives as a whole corroborate rather than disprove plaintiff’s testimony of his own continued inactivity following the industrial accident. Further, the mere fact that plaintiff worked for two days in the three years following the accident is not of itself particularly significant. In rebuttal, admitting he had worked on the days in question, plaintiff testified that immediately prior to such incident he had retained his present counsel who advised him to try to return to work, and that he did so until the reactivated pain forced him to seek further medical attention. Corroborative of this testimony is the deposition of Dr. DesOrmeaux, taken almost two years before the trial (at which for the first time it was developed that plaintiff had performed farm labors on October 25-26, 1955.) In this physician’s opinion, plaintiff’s disability, which had previously as of April, 1955 become dormant, was again manifest when plaintiff reported back to him on November 2, 1955 (i. e.. a week after the work incident), and had probably been re-activated by working or exertion.
*171 But the plaintiff’s apparently deliberate inaccuracy under oath when he initially denied having performed such heavier duties at any time following the accident does have some weight in the resolution of the ultimate issue of this case — whether the claimant does or does not suffer pain upon attempting to bend or to perform exertions; that is, whether his complaints of pain under such circumstances are truthful.
Three doctors found plaintiff disabled and accepted as involuntary muscle spasm and restriction of motion found to be corroborative of his disability;[2] at least three other doctors found plaintiff to be free of disability, and found that the noted muscle spasm and restriction of motion were (or could be) voluntarily produced by plaintiff. Thus, in the face of this disagreement by the medical experts as to whether the observed muscle spasm could or could not be voluntarily produced, the ultimate decision required of the trial court was whether plaintiff’s complaints of pain and symptoms of disability were genuine or were feigned.
That the claimant prevaricated and exaggerated his symptoms and was found untrustworthy as a witness would not prevent his recovery if the trial court found that a preponderance of the evidence in the record proved that he was disabled, for the test of recovery in a compensation suit is not veracity but disability. Johnson v. Calcasieu Paper Co., La.App. 1 Cir., 95 So.2d 659, certiorari denied. But the trier of fact herein, viewing plaintiff’s lack of credibility as determinative in a resolution of conflicting medical testimony which essentially depended upon whether plaintiff’s complaints were genuine or feigned, found that plaintiff had not proved his continued disability by a preponderance of the evidence. We are not prepared to say that such holding is so manifestly erroneous as to require the reversal on appeal o£ this factual finding by the trial court.
For the reasons assigned, the judgment dismissing the plaintiff’s claim is affirmed.
Affirmed.

. The actual dates were: May 3, Sept. 29-Oct. 1, Oct. 25-26, 1955; Jan. 10, May 17, 1956; Aug. 12-14, 1957.

. His fourth medical witness, Dr. O. V. Hatchette, found him disabled by reason of a ruptured ligament, assuming plaintiff's complaints of pain were genuine; but admitted that this individual diagnosis would be disproved if evidence was produced (as it subsequently was for the period during which plaintiff worked) that plaintiff could bend over continuously without apparent and marked difficulty.