557 So.2d 1078 (1990)
Fredrick LOYD, Plaintiff-Appellant,
v.
IMC FERTILIZER, INC., Defendant-Appellee.
No. 21237-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1990.
Writ Denied May 11, 1990.
*1079 Bruscato, Loomis & Street by James L. Braddock, Monroe, for plaintiff-appellant.
Shotwell, Brown & Sperry by C.A. Martin, III, Monroe, for defendant-appellee.
Before HALL, C.J., and FRED W. JONES, Jr. and SEXTON, JJ.
HALL, Chief Judge.
Plaintiff appealed from a judgment rejecting his demands for worker's compensation benefits, penalties and attorney's fees, asserting the trial court erred in failing to find the occurrence of a job related accident and a resulting disability. For the following reasons we reverse the judgment of the trial court and render judgment awarding benefits.

FACTS
In the suit against his former employer, IMC Fertilizer, Inc., Frederick Loyd alleged that he sustained a crippling back injury in an explosion which occurred at the IMC plant on July 25, 1987. Loyd alleged that the explosion knocked him off his feet and threw him into a piece of equipment, dazing him and causing a sharp pain in his lower back, which, although it subsided almost immediately, reoccurred and ultimately resulted in surgery and a temporary total disability.
The explosion occurred during the first half hour of Loyd's shift at the plant and he continued to work that day. He reported to a co-worker, Shirley Honeycutt and *1080 his supervisors that he had been knocked off his feet by the explosion. Ms. Honeycutt testified that she also was thrown into some cabinets in the explosion. Steven Rome, one of plaintiff's supervisors, testified that plaintiff reported to him that he had been knocked down in the explosion. Another witness who resided approximately one quarter of a mile from the plant, felt the explosion rock his home.
Plaintiff continued working until August 6, 1987 when he started seeking treatment from doctors. He first sought treatment from Dr. James Patterson for hemorrhoid problems on that date. Obtaining no relief, he sought treatment from Dr. Wadlington on August 20 for hemorrhoid problems and back pain. He saw Dr. Reed, a surgeon, on September 3. Dr. Reed referred plaintiff to Dr. Mac Temple Douglas, an internal medicine specialist, whom plaintiff saw on that date. Dr. Douglas noted plaintiff's complaints as including pain in the groin, testicles, back, and stomach accompanied by general depression and trouble sleeping. Plaintiff saw Dr. Douglas a second time on September 8, 1987. This was the first time that plaintiff related his pain to the explosion and accident at the IMC Plant. Dr. Douglas referred plaintiff to Dr. Findley, an orthopedic specialist for a second opinion. Plaintiff saw Dr. Findley on September 10, 1987 complaining of low back pain and numbness in his left leg. Dr. Findley scheduled a CT scan on September 25, 1987 and after finding no abnormalities referred plaintiff to a urologist. Plaintiff saw Dr. Tika B. Ranjikkar on September 29, 1987. Plaintiff then sought treatment through chiropractic care at the Smalling Humble Chiropractic Clinic. His treatments continued until March 14, 1988.
On December 11, 1987, plaintiff sought treatment from Dr. James Albright, Chief of Orthopedic Surgery at LSU Medical Center. The doctor's initial examination noted significant tenderness in the lumbosacral area both in the middle of the back and in the buttocks. He noted that straight leg raising was limited and that plaintiff had a decreased sensation over the top of his left foot and outer side of his left leg and knee. Dr. Albright ordered a MRI study which evidenced mild bulging of the disk at L4-5 and minimal evidence of spinal stenosis or decreased space in the spinal canal at the lower three levels. He saw plaintiff again on January 15, 1988 and noted plaintiff was still having problems and recommended a brace. On February 12, the plaintiff's condition was unimproved so Dr. Albright ordered a bone scan. The bone scan was basically negative indicating no problem. He again saw plaintiff on March 16, when plaintiff complained the symptoms were more severe. Plaintiff complained additionally of decreased sensation and tingling in his finger. After being injected with an anesthetic and a steroid agent plaintiff obtained complete temporary relief from his symptoms. Dr. Albright saw plaintiff again on March 30 with plaintiff showing only mild symptoms. Plaintiff talked to Dr. Albright on April 15, reporting his symptoms were worse than before. Dr. Albright performed a spinal operation on June 16, 1988 fusing the vertebrae at the L4-5, L 5-S 1 level. Pins were inserted into the spine securing a plate holding the spine rigid at that level. A bone graft was also performed for permanent fusion of the spine as the plate would only provide temporary relief. During the operation, Dr. Albright found significant compression of the nerve root through the foramen on the lateral side of the spinal canal which runs through the facet joints on the outside of the spinal column. Dr. Albright stated this condition was exactly compatible with the plaintiff's complaints of pain.
When questioned whether the condition that he observed during surgery could have been congenital, Dr. Albright stated that the likelihood of similar damage from congenital defects would be minimal; the usual cause would be an injury. He further stated it would take a year or two years to complete the healing process. He further stated that Mr. Loyd would not be able to return to work for at least six months after the deposition date which was October 14, 1988, and possibly longer.
During this course of events, plaintiff was absent from work, attempted to alter a medical form provided by one of the doctors, *1081 failed to return to IMC, Inc. with doctor's excuse forms, and ultimately was terminated in the latter part of December 1987. No mention of back trouble was brought to the defendant's attention until February 9 or 10, 1988 when plaintiff filed his claim with the Office of Worker's Compensation Administration.

TEMPORARY TOTAL DISABILITY
Plaintiff asserts the trial court erred in failing to find that plaintiff was temporarily totally disabled as a result of injuries sustained in the explosion at IMC. Plaintiff asserts that the severity of the explosion, the nature of the injury and the timing of the disability entitle him to the benefit of a presumption of causation. We agree.
In order to prove entitlement to temporary total disability benefits, plaintiff must show; (1) a work related accident; (2) that the accident resulted in injury; and (3) that the injury resulted in the disability. Walton v. Normandy Village Association, Inc., 475 So.2d 320 (La.1985); Gonzales v. Babco Farm Inc., 535 So.2d 822 (La.App. 2d Cir.1988), writ denied 535 So.2d 1200 (La.1988); Harris v. Haliburton Company, 501 So.2d 985 (La.App. 2d Cir.1987). The level of proof required to establish temporary total disability is by a preponderance of the evidence. Price v. Fireman's Fund Insurance Company, 502 So.2d 1078 (La.1987); Brewster v. Manville Forest Products, Inc., 469 So.2d 340 (La. App. 2d Cir.1985). The testimony of an injured employee can establish a compensable accident if supported by corroborating circumstances and the reliability of the testimony is not suspect. West v. Bayou Vista Manor Inc., 371 So.2d 1146 (La.1979); Jones v. Wausau Insurance Companies, 463 So.2d 883 (La.App. 2d Cir.1985). If the evidence leaves the probabilities evenly balanced, or if the evidence shows only a possibility of a work related event or leaves the question open to speculation or conjecture, then the plaintiff employee fails to carry his burden of proof. Gonzales v. Babco Farm Inc., supra; Dunckelman v. T. Baker Smith & Sons, Inc., 447 So.2d 26 (La.App. 1st Cir.1984).
The plaintiff employee may establish a rebuttable presumption of causal connection by showing that before the accident he was in good health but commencing with the accident symptoms of the disabling condition appear and continuously manifest themselves, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition or that the nature of the accident when combined with other facts of the case raises a natural inference through human experience of such a causal connection. Walton v. Normandy Village Homes Association, Inc., supra. In discussing the effect of the presumption, the Louisiana Supreme Court stated in Walton, supra,:
"The effect of the presumption is not so slight and evanescent that it is spent and disappears upon the mere production of evidence by the adversary. It is a true presumption which has been created for policy reasons that are similar to and just as strong as those that underlie the compensation principle itself: The probability of the causal connection under the circumstances which give rise to the presumption, the difficulty of proving causation with testimony by medical experts often sharply divided by differing schools of opinion and the desirability of reducing the margin of error inherent in litigation as to a disabled employee, both because he has at stake an interest of transcending valuehis and his families livelihoodand because those persons who enjoy the product of a business should ultimately bear the cost of injuries or deaths that are incident to the manufacture, preparation and distribution of the product. See Malone and Johnson, supra at Section 32, page 38; McCormick, supra, Section 345, page 822; S.F. Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958)."
Whether the plaintiff employee has carried his burden of proof and whether *1082 the plaintiff employee's testimony is credible are questions of fact to be determined by the trier of fact. It is a fundamental rule of appellate review that a trial court's factual determinations will not be disturbed on appeal in the absence of a showing of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Gonzales v. Babco Farm Inc., supra.
In written reasons for judgment, the trial court found the plaintiff untrustworthy and unreliable as a witness. This factual finding is amply supported by the record because of plaintiff's less than candid testimony concerning a doctor's excuse form and his complaints made to the first doctors who saw him in August, 1987. However, the plaintiffs untrustworthiness as a witness will not prevent his recovery if the record shows by a preponderance of the evidence that plaintiff was disabled. The test of recovery in a compensation suit is not veracity but disability. Richard v. Barber Brothers Company, 112 So.2d 168 (La.App. 1st Cir.1959); Johnson v. Calcasieu Paper Company, 95 So.2d 659 (La. App. 1st Cir.1957).
The testimony of the treating physician should be given great weight because his conclusions are based on repeated examinations and sustained observations of the patient. Mazoch v. Employers Casualty Company, 514 So.2d 1184 (La.App. 1st Cir.1987), writ denied 517 So.2d 812 (La. 1988); Brown v. Brook Tarpaulin Company of New Orleans, 485 So.2d 994 (La.App. 4th Cir.1986). Further, positive findings of medical experts are to be afforded greater weight than negative findings as to the existence or not of a particular condition. Campbell v. Luke Construction Company, 465 So.2d 688 (La.1985); White v. City of Eunice, 512 So.2d 599 (La.App. 3d Cir. 1987).
Although plaintiff's credibility is questionable, it is not necessary to rely on his testimony alone to establish his entitlement to worker's compensation benefits. The testimony of plaintiff's co-worker and supervisors established that plaintiff had no complaints of back problems prior to the explosion. The occurrence of the violent explosion is admitted. Plaintiff immediately advised co-workers that he was knocked down by the explosion as was a nearby co-worker. He began seeking treatment for pain within two or three weeks after the accident. He had no history of back injury prior to the accident. The treating physician related the injury to the accident.
Plaintiff's treating physician, Dr. Albright, found significant nerve impingement at the L5-S1 area. He stated this condition was compatible with the complaints that the plaintiff had made. Dr. Albright asserted that this type of injury is not generally diagnosed correctly by either general practitioners or other orthopedists.
Thus, we find that plaintiff has proved the applicability of the presumption of causation. He proved that before the accident he had not manifested disabling symptoms. Commencing with the accident the disabling symptoms appeared within a short period of time and manifested themselves thereafter, and there is medical and circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition. Walton v. Normandy Village Homes Association, Inc., supra; Mazoch v. Employers Casualty Company, supra.
At first plaintiff related his symptoms to his hemorrhoid and prostate problems rather than to the accident. The symptoms persisted and eventually were diagnosed by Dr. Albright as related to a back injury. Dr. Albright was of the opinion that plaintiff's back injury resulted from the accident at the plant.
According to Dr. Albright, plaintiff was not able to work from the onset of his symptoms and will continue to be totally disabled until at least six months after the date of Dr. Albright's deposition. Thus, plaintiff is entitled to benefits for temporary total disability.

NOTICE OF INJURY
Defendant asserts that plaintiff should be precluded from recovery because of a failure to notify defendant of the injury as required by LSA-R.S. 23:1301. However, *1083 defendant established no prejudice to its defense from the lack of notice. Cutno v. Neeb Kearney & Co., 237 La. 828, 112 So.2d 628 (La.1959). Defendant was notified contemporaneously with submission of the claim to the O.W.C.A. by letter from plaintiff's attorney dated February 9, 1988.

PENALTIES AND ATTORNEY FEES
Plaintiff also sought statutory penalties and attorney's fees for failure to pay his claim. Under LSA-R.S. 23:1201E, penalties are appropriate only if the employer does not have a reasonable basis on which to controvert the plaintiff's claim to compensation. Attorney's fees require finding that the employer's actions were arbitrary and capricious or without probable cause under LSA-R.S. 23:1201.2. Whether or not a refusal to pay benefits is arbitrary, capricious or without probable cause depends primarily on facts known to the employer at the time of its action. Hughes v. General Motors Lamp Guide Division, 469 So.2d 369 (La.App. 2d Cir. 1985). Whether a claim is reasonably controverted depends on the factual and medical information presented to counter the factual and medical information of the claimant. Green v. Jackson Rapid Delivery Service, Inc., 506 So.2d 1345 (La.App. 2d Cir.1987). The purpose of the penalty provision of worker's compensation statutes is to deter insurers and employers from unjustifiably terminating payments and assuming attitudes of indifference to difficulties incurred by injured employees. Chance v. Fidelity and Casualty Company of New York, 509 So.2d 593 (La.App. 3d Cir.1987).
Considering the facts known to defendant, the medical information presented by the various doctors, as well as plaintiff's lack of credibility, defendant was not unreasonable or arbitrary in controverting the plaintiff's claim for benefits. Defendant was not unreasonable in relying on the expert opinion of the various physicians, who saw plaintiff prior to his injury being diagnosed by Dr. Albright. Although their opinions were not sufficient to carry defendant's burden of proof on rebuttal of the presumption of causation, these medical experts presented respectable opinions disputing the causal relationship.

CONCLUSION
In summary, we conclude that plaintiff is entitled to temporary total disability compensation from the date of onset of his first symptoms, August 6, 1987. Plaintiff is not entitled to penalties or attorney's fees. Therefore, the judgment of the trial court is reversed and plaintiff is awarded temporary total disability benefits.
It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Frederick Loyd, and against defendant, IMC Fertilizer Inc., for worker's compensation benefits for temporary total disability at the rate of $262.00 per week from August 6,1987 until the termination of disability, with interest on each past due payment until paid, together with all reasonable and necessary medical expenses, including $25,372.08 past medical expenses, and all future expenses. Costs are assessed to appellee, IMC Fertilizer, Inc.
REVERSED AND RENDERED.