BYRNES, Judge.
This is an appeal from a worker’s compensation claim in which the appellant David Brown was denied benefits. The trial court concluded that “the credibility of the plaintiff is extremely suspect in matters which were vital to the minimum proof required in workmen’s compensation cases.” The court based this decision on Brown’s inconsistent testimony concerning records at De Paul Hospital. He appeals this finding and urges three assignments of error. After reviewing the record, we affirm the decision of the trial court.
The appellant is a two hundred sixty-five pound, six foot, three inch male who suffered a back injury on March of 1981 while erecting tents for Brooks Tarpaulin Company. He is also a diabetic. As a result of his accident he' received six months of workmen’s compensation for a soft tissue injury , to the spine. He claims that he is entitled to more compensation since the injury ultimately resulted in discogenic disease rather than just a soft tissue injury.
In discogenic disease, the nerve root is trapped between the bones of the spine. It is continually painful and considered by experts to be permanently disabling. In contrast, a soft tissue injury will usually improve and gradually stablize over the first six months, leaving some residual pain on rainy days. It is not considered to be disabling.
Over the four year period since his injury, the appellant has been treated by five doctors. Based on the opinions of the first two, he was given worker’s compensation for six months. Brown’s first physician ruled out disc disease as a diagnosis based on Brown’s good performance in leg raising tests and the general improvement in his condition as his back began to heal. Appellant followed this doctor’s prescription of bed rest, mild muscle relaxants and heat treatments. However, by August 1981, he still could not return to work.
At this point, Brown consulted Dr. Johnston on his employer’s recommendation. Dr. Johnston treated Brown for six weeks. Once again, tests for discognic disease were negative. On September 10, 1981, Dr. Johnston certified that Brown was able to resume normal activities and return to work in ten to fourteen days. The employer’s insurance company received this report and discontinued benefits as of October 9, 1981.
In the meantime on September 18, 1981 appellant attempted to use a Weed Eater at his home and suffered back spasms. He immediately contacted Dr. Johnston, but did not see him for two days. Upon exami *996 nation, Dr. Johnston found only a minimum decrease in movement. Furthermore, the results of tests conducted to reveal a herniated disc were normal. He prescribed conservative treatment (heat, pain pills, bed rest) with the possibility of hospitalization if the symptons continued. Brown did not return to work.
In March of 1982, Brown sought legal counsel to have his benefits reinstated. A demand letter was sent, but reinstatement was refused based on the earlier finding that Brown was suffering from the residual pain of a soft tissue injury.
In May of 1982, Brown was hospitalized at Tulane Medical Center. An EMG was conducted by Dr. Skinner which showed minor irritation to the nerve endings in Brown’s back. However Dr. Skinner concluded that the type of pain Brown was complaining of could also be caused by his diabetes.
Dr. Skinner then transfered to another hospital and Dr. Whitecloud began treating Brown. In October of 1982, he hospitalized Brown for a CT scan and bed rest. Due to Brown’s obesity, the scan was inconclusive. There are no other non-invasive tests which could be performed to determine the source of Brown’s pain. Dr. Whitecloud ruled out such exploratory surgery, because Brown’s obesity would make it too dangerous, and his diabetes would complicate his ability to heal. Moreover, the possibility existed that diabetes could be the source of the pain in the first place. Brown was therefore released.
In May of 1983, Brown consulted Dr. Phillips, his current physician. Dr. Phillips persuaded Brown to lose thirty pounds and have another CT scan done. Based upon this x-ray, Dr. Phillips diagnosed an extruding disc at the L-5, S-l level, which precludes Brwon from engaging in heavy manual labor.
Dr. Dietz who conducted and interpreted the test disagreed with Dr. Phillips and concluded that while there was a minor abnormality in that region, there were no signs of nerve entrapment.
In September of 1984, Brown admitted himself to De Paul Hospital’s substance abuse program. He claims that his constant back pain led to an addiction to tyle-nol fours (tylenol with codeine) and later to cocaine. Records from the hospital reveal that he was treated for cocaine addiction; that he claimed an accident in 1980 was the cause of his problem; that he never complained of back pain during the entire stay, and that he participated in volleyball and softball while there. When questioned about these records at trial, Brown’s responses were inconsistent and contradictory. The trial court found that Brown’s testimony concerning his disability lacked credibility, and found in favor of the defendant.
Under Louisiana Worker’s Compensation law, a plaintiff must prove by a preponderance of the evidence 1) that he is disabled; 2) that more probably than not, a work connected accident occurred; and 3) that a causal relationship exists between the accident and his disability. Jaeckle v. Dresser Industries, 457 So.2d 646 (La.1984). To determine if a disability exists the court must examine the totality of the evidence, including both lay testimony and medical testimony. Henson v. Handee Corp., 421 So.2d 1134 (La.App. 2nd Cir.1982).
Brown contends that the trial court failed to examine the depositions of his doctors. We find no evidence to support this contention. Moreover, taken as a whole, the medical evidence is in conflict. When this occurs, the testimony of the treating physican should be given the greater weight, since his conclusions are based upon repeated examinations and sustained observations of the claimant. Irvine v. Surety Insurance Co., 415 So.2d 467 (La.App. 1st. Cir.1982).
In the instant case, any one of the four doctors who treated the appellant regularly and had ample time to observe his symp-tons could be considered the treating physician. On the one hand, the first two doctors found a soft tissue injury. The third was not sure, but did suggest that the pain was from the diabetes. On the other hand, *997 based upon the CT scan, the last concluded that the disc was bulging. He considered this to be disabling for a manual laborer. The radiologist, however, could not find evidence of nerve entrapment.
No matter which doctor is given the greater weight, their testimony is conflicting and inconclusive. In such a case the court should give more serious consideration to the testimony of lay witnesses concerning the extent of the disability. Harrison v. Chicago Mill and, Lumber Co., 446 So.2d 843, 847 (La.App. 2nd Cir.1984).
In this case, the appellant was the only lay witness to testify concerning the extent of his disability. He claims that he has been in constant pain since the injury, and that that pain prevents him from returning to his old employment or from finding suitable new employment. In Holmes v. Morville Plantation, Inc., 314 So.2d 752 (La.App. 4th Cir.1975) we held:
“Proof of his subjective pain must of necessity depend to a great extent upon the trial court’s evaluation of the plaintiff’s credibility in light of the medical testimony.” Supra at 755.
In determining credibility, great deference is given to the trial judge since he alone has the opportunity to observe the demeanor of the witness. Arceneaux v. Dommique, 365 So.2d 1330 (La.1978). Here the trial court held that the appellant’s credibility was suspect, due to contradictions in his responses to questions concerning his stay at De Paul’s. We have reviewed the record and cannot say that this conclusion was manifestly erroneous. For the foregoing reasons, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.