514 So.2d 1184 (1987)
Roch MAZOCH
v.
EMPLOYERS CASUALTY COMPANY, et al.
No. 86 CA 0999.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
Rehearing Denied November 13, 1987.
Writ Denied January 15, 1988.
Patrick W. Pendley, Plaquemine, for plaintiff-appellee Roch Mazoch.
Bruce Parkerson, New Orleans, for defendants-appellants H.B. Zachary Co. and Employers Nat. Ins. Co.
Before GROVER L. COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
*1185 SAVOIE, Judge.
Roch Mazoch (Plaintiff) filed suit against H.B. Zachary Company and its insurer, Employers Casualty Company (Defendants), to recover additional worker's compensation benefits for a back injury he sustained on April 30, 1981.
Plaintiff alleged that he injured his back when he lifted steel conduit during the course and scope of his employment by H.B. Zachary Company. He immediately reported the injury, stopped working, and then returned to work on May 4. He was only able to work until May 6, 1981, due to the injury. Plaintiff alleged that he has not been able to work since that time. Defendants paid all Plaintiff's medical expenses and worker's compensation benefits from May 7, 1981 through September 9, 1981. Defendants discontinued compensation benefits on the basis that medical reports showed that Plaintiff was not disabled and was able to return to work.
At trial, Plaintiff testified as to his injuries. Dr. Henry LaRocca testified by deposition as to Plaintiff's medical condition. Defendants called Dr. Jackson to testify as to Plaintiff's medical condition, and offered the deposition testimony of Drs. Clifford and Smith. Defendants also called Barbara Jefferson, Plaintiff's ex-wife, and Steve Junot, a representative from the Vo-Tech school Plaintiff attended. The court awarded Plaintiff worker's compensation benefits for total permanent disability. Defendants now appeal.
Defendants' first assignment of error is that the trial court erred in giving greater weight to the deposition testimony of Dr. Henry LaRocca than to the testimony of the other physicians. The trial judge in his written reasons stated:
The only doctor who performed a truly intensive examination was Dr. Henry LaRocca, who administered both a myelogram and discogram and found, as a result thereof, that Mr. Mazoch had two degenerative discs in his back.
It is the opinion of this court that, especially in back cases, an intensive examination of this type should prevail over the merely physical examinations of the other physicians. Dr. LaRocca's testimony, coupled with the 50-50 lay testimony, tips the scale in favor of the plaintiff.
The factual findings of the trial court are not disturbed unless manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Defendants contend in brief that this standard is not applicable to deposition testimony, which is to be reviewed based on the sufficiency and preponderance of the evidence. Dickerson v. Zurich-American Ins. Co., 479 So.2d 571 (La.App. 1st Cir.1985). However, the Louisiana Supreme Court has ruled that the manifest error standard of review is applicable even to deposition testimony. Virgil v. American Guarantee and Liability Ins. Co., 507 So.2d 825 (La.1987).
Defendants contend that the trial court erred in giving great weight to Dr. LaRocca's testimony because he was not the treating physician. The testimony of the treating physician should be given greater weight because his conclusions are based on repeated examinations and sustained observations of the patient. Brown v. Brook Tarpaulin Co. of New Orleans, 485 So.2d 994 (La.App. 4th Cir.1986); Irvine v. Sentry Insurance Co., 415 So.2d 467 (La.App. 1st Cir.1982).
Dr. LaRocca first saw Plaintiff on March 8, 1982, almost one year after the accident. At that time, Plaintiff was complaining of both upper and lower back pain. Dr. LaRocca physically examined Plaintiff and took x-rays. He then gave Plaintiff a back support, or corset, to wear, as well as anti-inflammatory medication. He saw Plaintiff on April 13, 1982, to ascertain his response to the medication and corset, and on May 28, 1982, for a follow up visit. On June 30, 1982, he arranged for Plaintiff to have a myelogram; based on those results, Dr. LaRocca recommended a discography. He did not see Plaintiff again until March 5, 1984, at which time he recommended further testing since Plaintiff's physical condition had worsened since the June 30, 1982 visit. Plaintiff was hospitalized on April 16-18, 1984, to undergo a CAT scan and a discogram. LaRocca subsequently *1186 saw Plaintiff on June 11, 1984, August 15, 1984, January 25, 1985, and May 3, 1985; he told Plaintiff nothing was useful to him other than surgical treatment. There is no indication that Dr. LaRocca prescribed any further medications or orthopedic devices. On those visits, Dr. LaRocca noted that Plaintiff complained of the same pain problem. The record clearly shows that Dr. LaRocca was a treating physician, and as such, this testimony is entitled to the same weight as that of the other treating physicians.
Defendants further argue that the testimony of the physician who treated the Plaintiff the most contemporaneously with the accident is entitled to greater weight. Hayes v. Commercial Union Assurance Co., 459 So.2d 1245, 1250 (La.App. 1st Cir. 1984), writ denied, 462 So.2d 1247 (La. 1985). However, "positive findings of medical experts are to be afforded greater weight than the negative findings as to the existence or not of a particular condition." Campbell v. Luke Construction Co., 465 So.2d 688, 690 (La.1985) Results of CAT scans and myleograms have been held to constitute objective evidence of a herniated disc sufficient to support a claimant's subjective complaints. Jaeckle v. Dresser Industries, Inc., 457 So.2d 646 (La.1984).
While Dr. LaRocca did not treat Plaintiff as soon after his injury as did Drs. Jackson and Clifford, the CAT scan and myelogram he performed on Plaintiff showed a bulge at C4-5 and L5-S1. These objective findings supported the subjective complaints Plaintiff made following the accident. While Drs. Jackson and Clifford did treat Plaintiff immediately following the accident, they did not perform a CAT scan or a myelogram, which may have disclosed a Jackson and Dr. Clifford testified that after examining the CAT scan and myelogram results their opinion did not change that Plaintiff did not have a herniated disc. Both interpreted the test results in the light of their physical examinations of Plaintiff. The trial judge may consider the facts upon which an expert opinion is based in determining what weight to give the opinion. See Barry v. Western Electric Co., Inc., 485 So.2d 83 (La.App. 2nd Cir.), writ denied, 487 So.2d 441 (La.1986). For these reasons, we can not say that the trial judge was clearly wrong in giving the testimony of Dr. LaRocca greater weight than that of Drs. Clifford, Jackson, and Smith.
Defendants' second assignment of error is that the trial court erred in awarding Plaintiff worker's compensation because all the expert evidence showed that the work-related trauma did not cause Plaintiff's condition. According to Dickerson, 479 So.2d at 573-4:
The plaintiff in a worker's compensation suit must establish by a preponderance of evidence that the injury sustained was caused by the accident at issue. A claimant's disability is presumed to have resulted from an accident if before the accident the injured person was in good health but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection. (Citations omitted) (Emphasis ours).
The record shows that Plaintiff was in good health prior to the injury on April 30, 1981. He injured his lower back while working on October 3, 1980, but he testified that he had fully recovered from this injury in three weeks time. He also injured his back in a car accident in 1975 or late 1976, but again he testified that he fully recovered after the accident. Further examination of the record shows that it is undisputed that Plaintiff performed each aspect of his employment duties fully and effectively up to the time of his back injury on April 30, 1981. Since that time, both Plaintiff and Dr. LaRocca testified that he has been unable to perform manual labor due to the back injury.
*1187 The medical evidence shows that Plaintiff was initially diagnosed as suffering from upper back strain by Dr. Bolton, whom Plaintiff saw on May 13, 1981, and by Dr. Jackson, whom Plaintiff saw on June 2 and June 9, 1981. Dr. Jackson referred Plaintiff to Dr. Clifford because he could find no objective findings to support Plaintiff's continued complaints of pain. Plaintiff first complained of lower back pain on June 18, 1981, when he saw Dr. Clifford. Dr. Clifford after a physical examination could find no objective symptoms to support Plaintiff's complaints. Plaintiff went to another physician, Dr. Smith, on February 28, 1982, again complaining of lower back pain, but as with Dr. Clifford and Dr. Jackson, Dr. Smith could find no objective symptoms to support Plaintiff's complaints. When Plaintiff initially saw Dr. LaRocca on March 8, 1982, the x-rays he took showed "decreased height in the L5-S1 disk [sic] with some suggestion of degenerate changes in the joints attached to the above disks [sic] of the back." Dr. LaRocca also found some tenderness in the lower back. Plaintiff returned to Dr. Clifford on June 28, 1982; Dr. Clifford found Plaintiff's complaints to be unsupported by objective findings. On June 30, 1982, Dr. LaRocca had Plaintiff undergo a myelogram which showed a bulging disc at L4-5. On March 17 and September 1, 1983, Plaintiff returned to Dr. Jackson, who again found Plaintiff's complaints to be unsupported. On March 5, 1984, Dr. LaRocca examined Plaintiff and found he had a weakness in his big toe and a decreased range of motion. He performed the CAT scan and myelogram in April, 1984, which showed bulging discs at L5-S1 and L4-5. Dr. Clifford examined Plaintiff again on August 18, 1985, and again found no objective symptoms.
Plaintiff has clearly complained of lower back pain since June 18, 1981, about a month and a half after the accident. It was not until the myelogram performed June 30, 1982 showed a bulging disc that there was any objective finding. Defendants contend that had Plaintiff's accident caused the bulging discs, he would have manifested physical symptoms such as an abnormal gait, muscle spasm, or decreased motion no later than one year after the accident. Discounting the June 1982 myelogram, Defendants contend that objective findings did not manifest themselves until Dr. LaRocca's examination of Plaintiff in March of 1984.
Dr. Jackson testified that Plaintiff's degenerative discs were not caused by the accident. He said that if Plaintiff would have suffered a bulging disc due to the accident, there would have been objective findings other than those of the CAT scan and myelogram. However, Dr. Jackson did say that the symptoms of back injury do periodically come and go. Dr. Clifford testified that if Plaintiff had injured a disc in his accident, there would have been objective findings within six months to one year of the accident.
Dr. LaRocca was not asked whether Plaintiff's accident caused his disc problems. The medical records of Dr. LaRocca following Plaintiff's 1982 myleogram contain the statements: "This individual's history and physical findings are consistent and give evidence to support his complaints. The fundamental etiology of this problem is uncertain." Dr. Smith, in response to a question from Plaintiff's counsel, testified:
I am of the understanding that you're hypothetically setting forth a case where a patient for some reason or other is known to have a herniated intervertebral disc and you're asking me would it be unusual for that patient to have had some episode of injury as long as eighteen months prior to the time that I saw him and would it be unusual for that patient to have symptoms and findings from time to time and not have symptoms and findings from time to time. None of this would be unusual. It's almost classic with patients with intervertebral disc problems.
Based on the evidence, we cannot say that the trial court was clearly wrong in finding that the accident caused Plaintiff's disability. The doctors testifying on behalf of Defendants all based their conclusion that the accident did not cause Plaintiff's *1188 disability on their physical examinations of Plaintiff, despite the fact that a later, more intensive examination with the CAT scan and myleogram did reveal bulging discs at L5-S1 and L4-5. As we earlier stated, in weighing the opinion of an expert, the fact finder may consider the facts upon which the opinion is based. Furthermore, "[c]ausation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence." Haughton v. Fireman's Fund American Ins. Companies, 355 So.2d 927, 928 (La. 1978). We find that Plaintiff has proved those elements of the presumptionthat is, he proved that before the accident he had not manifested disabling symptoms, commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and there is medical and circumstantial evidence indicating a reasonable possibility of causal connection between the accident and activation of the disabling condition. See Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320, 324-5 (La.1985).
Once Plaintiff established the presumption of the causal relationship, Defendants must prove that it is more probable than not that the work-injury did not cause the disability. Walton, 475 So.2d at 325. Defendants questioned Plaintiff concerning an automobile accident he was involved in sometime after his work-injury, yet they offered no testimony to show that this was a separate or intervening cause of Plaintiff's disability. No further evidence was offered to show any other intervening cause of Plaintiff's disability. Thus, we find Defendants did not rebut the presumption of causation established by Plaintiff. For these reasons, Defendants' second assignment of error has no merit.
Defendants' third assignment of error is that the trial court erred in finding Plaintiff disabled. Defendants contend that a preponderance of the evidence showed that Plaintiff was able to return to work without restriction. We should note that because Plaintiff's accident occurred in 1981, we must apply the worker's compensation statutes and law as it was prior to the 1983 amendments to the worker's compensation statutes. Defendants rely on the testimony of Drs. Clifford, Jackson, and Smith, who stated that the Plaintiff was able to return to work without restrictions based upon their inability to find any objective symptoms to support Plaintiff's complaints.
As earlier discussed, the trial judge based his findings as to Plaintiff's disability on the testimony of Dr. LaRocca. Dr. LaRocca testified that he would consider Plaintiff unable to perform "physical labor without significant pain and difficulty." He said that if Plaintiff underwent surgery successfully, he probably would be able to work again. Based upon our earlier discussion of the medical testimony, we cannot say the trial court was clearly wrong in finding that Plaintiff was disabled.
Defendants also assign as error the trial court's finding that Plaintiff was totally and permanently disabled. LSA-R.S. 23:1221(2) read as follows at the time of Plaintiff's injury:
(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability.
We cannot say that the trial court's holding that plaintiff is entitled to benefits for total and permanent disability is clearly wrong. Dr. LaRocca, when asked about Plaintiff's ability to work, did say that Plaintiff could not perform physical labor without pain. The trial judge did not explain his reasons for finding that the Plaintiff was totally and permanently disabled, other than to state his reliance on the findings of Dr. LaRocca. An employee who is unable to work without having to endure substantial and constant pain is totally disabled. Olson v. Ins. Co. of State of Pa., *1189 471 So.2d 1151 (La.App. 3rd Cir.), writ denied, 476 So.2d 352 (La. 1985). Plaintiff testified that he experienced substantial pain while laboring. Great deference is given to the factual determination of the trial court; in this case, the only evidence which countered Plaintiff's claims of pain was that of his ex-wife, Barbara Jefferson, who testified that on one occasion she saw Plaintiff dancing, and on another occasion, Plaintiff sat with her in a courtroom for hours without complaint. The trial judge examined this testimony along with that of Dr. LaRocca, and found Plaintiff to be totally and permanently disabled.
Under the worker's compensation law applicable to this case,[1] if an employee is shown to be totally disabled at the time of trial, and the disability is of indefinite duration, then the employee is entitled to benefits for total permanent disability as opposed to those for temporary total disability. Olson v. Ins. Co. of State of Pa., 471 So.2d at 1154. Thus, we affirm the trial court's award of total and permanent disability benefits although Plaintiff's disability may be remedied by surgery. We also note that under the former and present law,[2] the judgment for permanent total disability is subject to modification should Plaintiff's disability cease. LSA-R.S. 23:1331. Montgomery v. Delta Concrete Products Co. Inc., 290 So.2d 769 (La. App. 1st Cir.1974), Wheat v. Ford, Bacon and Davis Const. Corp., 479 So.2d 439 (La.App. 1st Cir.1985).
For the above reasons the decision of the trial court is affirmed. Defendants are cast for costs of this appeal.
AFFIRMED.
NOTES
[1] Because this injury occurred in 1981, we must apply the worker's compensation law as it was prior to the 1983 amendments. The jurisprudence had accepted as an established principle that "a judgment for total permanent disability should be awarded when the claimant is shown to be totally disabled at the time of trial and the duration of such disability is indefinite or the evidence does not clearly indicate its duration." Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985, 987 (La.1976). The 1983 amendments to the worker's compensation statutes legislatively overruled this jurisprudential principle. Under the new law, the worker must prove "by clear and convincing evidence, unaided by any presumption of disability," that the total disability is permanent. LSA-R.S. 23:1221(2)(c).
[2] The statute dealing with judicial review of a worker's compensation award as it read prior to the 1983 amendments provided that "at any time six months after the rendition of a judgment of compensation, a judge of the trial court that rendered the judgment shall review the same upon the application of either party for a modification thereof, or the grounds that the incapacity of the employee has been subsequently diminished or increased, or that the judgment was obtained through error, fraud, or misrepresentation." LSA-R.S. 23:1331. LSA-R. S. 23:1331(C) now reads as follows:

At anytime after six months after rendition of a judgment of compensation by the district court or at anytime after six months from the date of the acceptance by the parties of the recommendation of the director under R.S. 23:1310.1, the director shall review the same upon the application of either party for a modification thereof and shall issue a recommendation pursuant to R.S. 23:1310.1.