479 So.2d 571 (1985)
Ron DICKERSON
v.
ZURICH-AMERICAN INSURANCE CO.
No. 84 CA 0966.
Court of Appeal of Louisiana, First Circuit.
November 19, 1985.
Roy Maughan, Baton Rouge, for plaintiff-appellant Ronald Dickerson.
R. Michael Caldwell, Baton Rouge, for defendant-appellee Zurich-American Ins. Co.
Before CARTER, SAVOIE and ALFORD, JJ.
*572 CARTER, Judge.
This is a worker's compensation suit arising out of a work-related accident involving plaintiff, Ron Dickerson. After a trial on the merits, the trial judge found that plaintiff suffered a 15% permanent partial loss of use of his left leg, entitling him to compensation under the provisions of LSA-R.S. 23:1221(4)(h).[1] Plaintiff appeals, claiming that he is entitled to benefits under LSA-R.S. 23:1221(3).[2]

FACTS
On December 9, 1982, plaintiff was working as a painter for R.M. Hill, M.D. in a shopping center being constructed in Baton Rouge. While plaintiff and a co-worker were setting up scaffolding necessary to perform their job, the co-worker slipped, causing the piece of scaffolding which he and plaintiff were holding to shift and fall. Plaintiff jumped to safety rather than being trapped under the scaffolding. Unfortunately, he landed on both heels on the concrete below. The distance of the fall was not established at trial, but it is uncontroverted that plaintiff was injured by the fall, experiencing pain in his feet.
Plaintiff immediately went to Dr. Hill's office where he was examined by a Dr. Tonore. The doctor took x-rays and diagnosed the problem as a sprained left ankle. Plaintiff went home and stayed off his feet for one week.
Dr. Hill examined plaintiff on two occasions subsequent to Dr. Tonore's examination. No more x-rays were taken. Dr. Hill just prescribed soaks and wraps for the ankle.
On January 5, 1983, plaintiff went to Dr. J. Thomas Kilroy. When Dr. Kilroy examined plaintiff's x-rays, he discovered the foot was broken. The doctor found contusions to both heels with gross swelling in the front and side of the left ankle. Plaintiff had a decreased ability to pick up his left foot, but his vascular and nerve functions as well as his motion proved otherwise normal. The break was a chip fracture of the anterior tibial plafond.[3] Plaintiff was placed in a walking cast.
On his next visit to Dr. Kilroy on January 21, 1983, plaintiff was found to be clinically healed. Hot and cold soaks were prescribed. Plaintiff was also advised to begin partial weight bearing on the foot and to progress slowly to full weight bearing.
In the next three visits in February, April and July, plaintiff had some swelling and complained of stiffness and pain. Dr. Kilroy continued to prescribe ankle wraps, soaks and increased use.
Plaintiff's last visit to Dr. Kilroy was on August 10, 1983. He was still complaining of pain and difficulty in using his ankle. The doctor noted that the pain which plaintiff claimed to have was not in the area of the fracture as it had been on all previous *573 visits. This pain was posterior to the fibula, outside the ankle joint, 180° around the ankle area from the fracture. Dr. Kilroy noted that the bone had been healed for some time, and he released plaintiff with no restrictions. He did, however, assign a 15% permanent physical impairment rating (anotomical and functional) to plaintiff's ankle.
Plaintiff saw Dr. Clifton Shepherd, an orthopedist, from December 28, 1983 through February 1, 1984. Dr. Shepherd found no swelling and a full range of motion. There was tenderness along the path of the peroneus brevis tendon, which runs toward the fifth metatarsal in the area of the posterior and distal fibula (the back of the ankle). Plaintiff was within normal limits on all tests, and his bone scan revealed an old healed fracture of the anterior and distal tibia at the ankle joint (the one suffered in the accident at work). The doctor diagnosed the problem as a peroneal brevis tendon strain for which he prescribed immobilization, anti-inflammatory drugs, heat and physical therapy. Without being released, plaintiff discontinued seeing Dr. Shepherd after February 1, 1984.

ISSUES
Plaintiff presents three issues for resolution:
(1) Was the injury which disabled plaintiff at time of trial related to the initial injury;
(2) At time of trial did plaintiff's disability prevent plaintiff from performing the duties of a commercial painter which is what he was customarily engaged when injured, or, duties of the same of similar character, nature and description; and,
(3) Whether plaintiff is permanently partially disabled thereby entitled to benefits as outlined in LSA-R.S. 23:1221(3).

DISCUSSION
The crux of plaintiff's complaints is that the trial court was manifestly erroneous in its finding of fact and therefore improperly allowed benefits under LSA-R.S. 23:1221(4) for a percentage of scheduled disability rather than under LSA-R.S. 23:1221(3) for permanent partial disability.
In reviewing the factual findings of the trial court, we do not disturb such findings absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, when the trial court relies upon depositions, the rules of Canter v. Koehring Company, 283 So.2d 716 (La.1973), and Arceneaux v. Domingue, supra, do not apply because the trial court is unable to observe the demeanor of the witness and the trial court is in no better position to assess credibility than the appellate court. In such a case, the appellate court must determine the sufficiency and the preponderance of the evidence. Gould v. State Through La. Dept. of Correct., 435 So.2d 540 (La.App. 1st Cir.1983); F & S Offshore v. Serv. Mach. & Shipbuilding, 430 So.2d 1167 (La.App. 1st Cir.1983). See also dissent in Jaeckle v. Dresser Industries, Inc., 447 So.2d 15 (La.App. 1st Cir. 1984).
In the instant case, Dickerson, his wife, his employer, and a co-worker testified at trial. All of the other testimony, i.e., that of the physicians who examined and/or treated Dickerson, was presented in the form of depositions.
Therefore, in reviewing the facts of the instant case, all lay testimony will be reviewed on the basis of manifest error, and all medical testimony will be reviewed on the basis of sufficiency and preponderance of the evidence.
In the instant case, the trial judge determined that the residual pain and weakness plaintiff described at trial was not related to the work-related accident. We agree.
The plaintiff in a worker's compensation suit must establish by a preponderance of evidence that the injury sustained was caused by the accident at issue. Robertson v. Scanio Produce, 449 So.2d 459 (La. 1984); Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982); West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Conrad v. Jack Donahue Contractors, Inc., 450 So.2d 1035 (La.App. 1st Cir.1984).
*574 A claimant's disability is presumed to have resulted from an accident if before the accident the injured person was in good health but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of causal conection between the accident and the disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection. Walton v. Normandy Village Homes Assoc., Inc., 475 So.2d 320 (La. 1985). See also Robertson v. Scanio Produce, supra; Lucas v. Ins. Co. of North America, 342 So.2d 591 (La.1977).
The presumption of causation is not irrebuttable, rather when established, its effect is to shift the burden of proof to the defendant. Robertson v. Scanio Produce, supra.
In the instant case, there is an absence of sufficient medical evidence to show a reasonable possibility of causal connection between the accident and the disabling injury, and the nature of the accident, when combined with the other facts of the case, does not raise a natural inference through human experience of such a causal connection.
Both doctors believed that plaintiff's current complaints of pain were not related to the original accident. Dr. Kilroy explained that pain from fractures is spot-specific. Pain from fractures does not travel or manifest itself elsewhere. The fact that plaintiff did not complain of pain in the back of his ankle until nine months after the accident lead Dr. Kilroy to believe the pain was not related to the accident. Dr. Kilroy testified as follows:
Q. Did you find any evidence of any functional restrictions on Mr. Dickerson as a result of the fracture that you discovered in your x-rays of January 5, 1983?
A. No, sir. That day, that's why I encouraged himhe had a full range of motion, and his x-rays looked excellent. And I told him, `Do whatever you want to do.'
Q. Considering his x-rays, I assume, showed that his fracture had, in fact, healed, is that right?
A. The fracture healed long before that, but at that length you're talking about nine months, and there wasn't any bone changes or anything. So you can feel fairly secure in letting someone go back to doing what they want to do, if they don't have any bone changes.
Q. Would it be fair to say that you would not have anticipated him to be having the type of pain he was describing as a result of the injury that you found that eight or nine months later?
A. Well, the pain he was having then wasn't even close to where the fracture was.
Q. Where were his complaints of pain or where was his pain located?
A. Posterior to the fibula, what we call the area outside the ankle joint where it impacts into the os calcis.
Q. Okay. So this would be from the other bone in the leg, the fibula, as opposed to the tibia, correct?
A. Yes.
Q. And you saw nothing to restrict Mr. Dickerson from returning to any sort of manual labor as a result of the injury he had sustained in December, is that correct?
A. That's correct.
Q. Have you seen Mr. Dickerson since that time?
A. No, sir.
Dr. Shepherd agreed with Dr. Kilroy and testified as follows:
Q. And did I understand your testimony correctly, that you have no explanation as to why Mr. Dickerson is having the complaints that he had when he came to see you in December and *575 January of 19December of 1983, and January of 1984?
A. That's correct.
Q. Did I understand you to say that it is possible that his complaints could have been related to the injury of December of 1982?
A. It is possible.
Q. But you do not think it is probable; is that correct?
A. Correct.
Although plaintiff abused his ankle by continuing to work while in a cast and after its removal and by failing to wear his removable splint, the doctors opined that these things only delayed the healing. Dr. Shepherd, however, testified that the foot should have healed by the time of trial regardless of plaintiff's abuse of it. The doctor could not explain why plaintiff experienced pain from the date of the accident more than one year after its occurrence. Both doctors testified that the type of pain plaintiff complained of could possibly be related to the accident, but both were of the opinion that in this case it was not. In applying the sufficiency and preponderance of the evidence test to the medical evidence, it is clear and uncontroverted as to the absence of causation. As concerns the testimony adduced at trial, we cannot say that the findings of fact by the trial judge are manifestly erroneous.
Plaintiff complains he is no longer able to perform the duties of commercial painter, his customary work, which is due to the residual pain of the work-related injury. Applying the legal precepts to the evidence does not support a finding that the pain was residual, and plaintiff is not entitled to benefits under § 1221(3). Since plaintiff's current complications are unrelated to his work injury, he is not entitled to compensation for permanent partial disability.
The only medical testimony in the record as to disability was Dr. Kilroy's assessment in his deposition of a 15% permanent partial loss of function to the ankle because of the broken bone. This problem resolved itself with no residual pain related to it. Compensation was awarded to plaintiff under § 1221(4)(h), and applying the appropriate tests under the applicable standards of review, we affirm the judgment of the trial court.[4] Costs are assessed against plaintiff.
AFFIRMED.
NOTES
[1] LSA-R.S. 23:1221(4)(h) reads:

(4) Permanent partial disability. In the following cases, compensation shall be solely for anatomical loss of use or amputation and shall be as follows:
(h) For the loss of a leg, sixty-six and two-thirds percent of wages during one hundred seventy-five weeks.
This provision has remained unchanged since the date of plaintiff's accident.
[2] On the date of plaintiff's accident, LSA-R.S. 23:1221(3) read, in pertinent part, as follows:

(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, but ... not beyond a maximum of four hundred fifty weeks for such partial disability resulting from injury occurring on and after September 1, 1977.
[3] This is the part of the large bone of the lower leg closest to the ankle. The break was on the front of that bone near the ankle.
[4] It appears that compensation should have been awarded under LSA-R.S. 23:1221(4)(o), but neither party raises this issue on appeal.