550 So.2d 1214 (1989)
Eugene A. TASSIN
v.
NEW ORLEANS DELIVERY SERVICE and Liberty Mutual Insurance Company.
No. 89-CA-167.
Court of Appeal of Louisiana, Fifth Circuit.
September 5, 1989.
Rehearing Denied November 17, 1989.
*1215 G. Michael Grosz, III, Ken Mayeaux, Gretna, for plaintiff-appellee Eugene A. Tassin.
Kristin H. White, Borrello, Huber and Dubuclet, Metairie, for defendants-appellants NOLA Delivery Service, Inc. and Liberty Mut. Ins. Co.
Before KLIEBERT, GOTHARD, JJ., and TIEMANN, Jr., Pro Tem.
KLIEBERT, Judge.
Eugene A. Tassin, plaintiff, sued his employer, NOLA Delivery Service, Inc.,[1] and Liberty Mutual Insurance Company, its insurer, collectively defendants, to recover: (1) weekly compensation benefits based on permanent total disability, (2) reimbursement for certain medical expenses defendant had refused to pay, and (3) penalties and attorney fees for being arbitrary and capricious in the handling of his claim.
The compensation claim was predicated on a back injury plaintiff sustained on May 11, 1984 while delivering a refrigerator to a customer in the normal course and scope of his employment. After the accident, plaintiff was put on full benefits of $245.00 per week. As of March 15, 1986, Liberty Mutual reduced the weekly benefits to $195.92, computed as the supplemental benefits based on plaintiff earning minimum wages and working twenty hours per week. Further, plaintiff contends defendant refused to pay certain medical expenses because it believed the expenses were for treatment of non-work related medical expenses.
The trial court found plaintiff was totally and permanently disabled and accordingly awarded him full benefits at the stipulated rate of $245.00 per week. Further, it ordered defendants to pay the difference ($49.08) between the full benefits of $245.00 and the supplemental earnings benefits of $195.92 from March 1986 until full payment of $245.00 is resumed. Defendant was also required to reimburse plaintiff for disputed medical bills and prescription medicines. The court also assigned statutory *1216 penalties of 12% and attorney's fees of $3,000.00.
Defendant perfected a suspensive appeal. The appeal presents three issues for review:
(1) Did the court err in finding the plaintiff totally and permanently disabled and ordering payment of full compensation benefits?
(2) Did the court err in ordering defendant to pay the disputed medical expenses?
(3) Was the defendant Liberty arbitrary and capricious in the handling of the claim?
We amend the judgment to delete the assessment of penalties and attorney fees and to cast the proper defendants and, as amended, affirm.
Plaintiff worked as a truck driver/delivery man for NOLA Delivery Service, Inc. for some 19 years. On May 11, 1984, while squatting to pick up a 600-700 pound refrigerator for delivery, he felt a sharp pain in his lower back. He went directly to Ochsner Hospital for treatment.
After initially being placed on "no work status" by his treating physicians, Julius J. Whittington, III and Douglas A. Swift, of the Department of Occupational Medicine, Ochsner Clinic, Dr. Swift released plaintiff to perform sedentary work on June 8, 1984. This restriction continued until Homer D. Kirgis, M.D., Department of Neurosurgery, Ochsner Clinic, evaluated plaintiff. His report, dated June 14, 1988, states plaintiff "still is disabled for the performance of any type of work." At the time of trial, plaintiff was not performing any type of work. Thus, the record establishes that at the time of trial plaintiff was totally and permanently disabled.
However, defendants argue that a pre-existing degenerative disc disease and arthritis are the causes of plaintiff's disability and not the accident of May 11, 1984. Based on plaintiff's testimony and the stipulated medical reports, defendants contend plaintiff injured only his back in the accident and that injury has essentially healed. Defendants contend benefits were properly reduced because the disability was caused by a non-work related degenerative disc disease; non-work related arthritis in his knees and hands, and further, because plaintiff was capable of performing some type of work.
The underlying fallacy in defendant's arguments is its consistent effort to view this plaintiff's disability solely from his back injury. The law is settled that a pre-existing disease or infirmity of an employee does not disqualify the worker's compensation claim, if the work injury aggravated, accelerated or combined with the disease or infirmity to produce death or disability for which compensation is claimed. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985). Here, before the accident plaintiff was active, able to and did work at a demanding manual labor job. After the on-the-job accident, he became inactive, was in constant pain, and unable to perform the same job. Further, the medical report dated July 11, 1984 from Dr. Harold M. Stokes, a treating orthopaedic surgeon, indicates the degenerative disc disease predated the May 11, 1984 accident but may have been aggravated by that injury. Therefore, the disability is presumed to have resulted from the on-the-job accident and it was defendants' burden to disprove the presumed causal connection. See Walton, supra. As the record is void of evidence by defendants rebutting the presumption, the trial court properly found plaintiff's total disability was caused by the May 11, 1984 accident.
Notwithstanding plaintiff's present disability due to progressive degenerative disease of the back, wrist and knees, defendant contends it was justified in reducing the weekly benefits because plaintiff was capable of performing some work but refused to do so.
The trial court found plaintiff did all that was required of an injured worker under Louisiana Worker's Compensation Law. He maintained an active search for work, went to all interviews set up by defendant seeking employment, and sought *1217 out interviews on his own. Unfortunately there were no job offers.
Defendant argues there were no job offers because of too many self-imposed restrictions placed by plaintiff on the type job he would accept. However, the medical reports state any suggested employment not include bending, stooping, or lifting due to plaintiff's condition. Further, plaintiff testified as to the pain he suffered and how it affected the activities he could do. He could not stand, sit or walk for long periods without experiencing pain. Although not specifically stated in the medical reports issued prior to March 15, 1986 (the date benefits were reduced), it is apparent plaintiff suffered pain and discomfort which limited his job opportunities and that his disability increased with the passage of time.
The medical report of A. William Dunn, M.D., a consulting physician from the Department of Orthopaedic Surgery at Ochsner Clinic, on August 26, 1986 states plaintiff will never be released to do any work requiring lifting, prolonged standing, or walking. Further, the report of Dr. Stokes, dated May 4, 1987, repeats prior work restrictions and states any job should allow plaintiff to sit and stand at will. Finally, the medical report of Dr. Kirgis, dated June 14, 1988, states plaintiff's disability has progressed to the point where he cannot work at all.
Thus, the record supports the trial court's finding that plaintiff was entitled to full compensation benefits from the date of the injury on May 11, 1984, and defendant was wrong in reducing his weekly benefit payments. Hence, we see no error in the trial court's ruling awarding to plaintiff full benefits from the date of the back injury.
We next turn to defendant's contention the trial judge erred in awarding to plaintiff the disputed medical expenses.
LSA-R.S. 23:1203(A)[2] provides, in pertinent part:
"In every case coming under this Chapter, the employer shall furnish all necessary medical, surgical, and hospital services, and medicines, or any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. All such services and treatment shall be performed at facilities within the state when available."
To be awarded medical expenses, the expenses must be the result of a work-related injury and plaintiff must establish his claim for medical benefits and show their relation to the work accident to a reasonable certainty and by a preponderance of the evidence. Charles v. Aetna Casualty and Surety Co., 525 So.2d 1272 (3rd Cir. 1988).
The only evidence of record regarding medicines came from plaintiff. He testified that although he was free from pain and not on any medication just prior to the accident, he had taken Naprosyn for a past arthritic knee problem. After the accident plaintiff suffered from pain which caused him to take medication. He then identified a number of checks which he stated were for medicines prescribed by treating physicians since the May 11, 1984 accident. These checks totalled $631.72. Although plaintiff could not remember exactly what each check was for over this four year period, he testified every check was for drugs prescribed by his doctors to relieve the pain he suffered following the accident.
In evaluating evidence, the trier of fact should accept as true the uncontradicted testimony of a plaintiff witness absent a sound reason for its rejection. Robertson v. Scanio Produce and Institutional Foods, Inc., 449 So.2d 459 (La.1984); Randall v. St. Paul Fire and Marine Insurance Co., 470 So.2d 301 (5th Cir.1985). The only rebuttal to plaintiff's testimony came on cross examination where plaintiff stated he could not remember exactly what each check was for over this four year period. Where there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for such finding, it *1218 should not be disturbed unless such finding is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Crump v. Hartford Accident and Indemnity Co., 367 So.2d 300 (La.1979); Randall v. St. Paul Fire and Marine Insurance Co., supra.
The same rules and standards apply to the Ochsner Clinic bill of $225.00. The testimony at trial was that, except for muscle pulls, bumps and bruises, and prior bouts with arthritis, plaintiff was relatively injury and pain free before the accident. After the accident, a pre-existing infirmity was aggravated, causing plaintiff extensive pain. Dr. Stokes' medical report of July 11, 1984 indicates plaintiff suffered some initial radiation of pain into the leg following the accident, but it had subsided. Thereafter, because of numbness in the leg, plaintiff sought treatment at Ochsner Clinic. Defendant argues this is not sufficient to establish this symptom was due to the May 11, 1984 accident. However, a causal relation may be inferred when there is proof of an accident during the course of employment and a subsequent disability or injury with no intervening cause. See Lay v. Allied Chemical Corp., 340 So.2d 1076 (1st Cir.1976). Thereafter, defendant has the burden of proof to rebut the presumption. See Walton, supra. Here defendants offered no evidence to rebut the presumption.
Following the above stated standard of review, we cannot say the trial court was clearly wrong in finding the expenses compensable.
Finally, we turn to defendant's contention the trial court erred in finding they acted arbitrarily and capriciously in handling the claim, i.e., reducing the benefits and refusing to reimburse plaintiff for medical expenses.
LSA-R.S. 23:1201 is the penalty statute and provides in pertinent part:
"B. The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer has knowledge of the injury or death and resulting loss of income, on which date all such compensation then due shall be paid.
* * * * * *
E. If any installment of compensation payable without an order is not paid within the time period provided in Subsections (B), (C), or (D) of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay. No worker's compensation insurance policy shall provide that this sum shall be paid by the insurer if the director or the court determines that the twelve percent additional payment is to be made by the employer rather than the insurer. Any additional installment of compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee."
LSA-R.S. 23:1201.2 sets forth when attorney's fees are due as follows:
"Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or *1219 tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply to cases where the employer or insurer is found liable for attorney's fees under this Section. The provisions of R.S. 22:658 shall not be applicable to claims arising under this Chapter."
Whether a refusal to pay benefits is arbitrary, capricious, and without probable cause depends primarily on facts known to the insured at the time of its action and the trial court's factual determination of what the defendants knew will not be disturbed on appeal absent manifest error. Scott v. Insurance Company of North America, 485 So.2d 50 (La.1986); Randall v. St. Paul Fire and Marine Insurance Co., supra.
In our view the trial court was manifestly erroneous in finding defendant acted arbitrarily and capriciously in reducing benefits as of March 15, 1986 and in refusing to reimburse plaintiff for medical expenses. The insurer relied on medical reports as early as June of 1984 from Dr. Swift stating plaintiff could return to sedentary work, including the March 11, 1985 report of Dr. Stokes stating plaintiff suffered a "total of 10% permanent partial impairment." Further, plaintiff's rehabilitation counselor stated he could not get a job because plaintiff placed too many self-imposed restrictions on jobs he would accept. Thus, at the time benefits were reduced, defendant reasonably believed plaintiff could perform some work. Hence, it did not act arbitrary and capricious, and without probable cause in reducing benefits to supplemental earnings benefits. See Lang Pham v. Delta Petroleum Co., Inc., 503 So.2d 149 (5th Cir.1987); see also Fruge v. Pacific Employers Ins. Co., 226 La. 530, 76 So.2d 719 (La.1954), where the Louisiana Supreme Court indicated an arbitrary and capricious finding may not have occurred if benefits would have been reduced to supplemental earnings benefits instead of being cut off completely, where the only dispute between plaintiff and defendant concerned the extent of plaintiff's injury.
As to the expenses for medicines and the hospital bill, plaintiff stated he spoke with Barbara Allen, his Liberty Mutual claims adjuster, and requested payment for various drugs which he had been taking since the accident. Ms. Allen's response was defendant would not pay these drug bills unless directly related to his back injury. Therefore, plaintiff testified, he did not submit written requests for reimbursement. Ms. Allen did not testify at trial and plaintiff's version of defendant's refusal is not in dispute.
Further, although written notice of the Ochsner Clinic bill for $225.00 was submitted, because the symptom plaintiff had checked off was not directly related to the back injury, the bill was not paid.
Since there was sufficient evidence at the time for defendants to believe the expenses were not compensable the trial judge erred in assessing penalties and attorney fees.
Therefore, we amend the trial court judgment insofar as it assessed penalties and attorney fees. Further, for the reasons above stated we amend the judgment to cast the defendants, NOLA Delivery Service, Inc. and Liberty Mutual Insurance Company as the propert defendants and, as amended, affirm. Costs of the appeal are to be borne by defendants.
AMENDED AND, AS AMENDED, AFFIRMED
NOTES
[1] Plaintiff's original petition incorrectly named New Orleans Delivery Service as defendant. By a supplemental and amending petition the name of defendant was changed to NOLA Delivery Service. However, in the trial court judgment, New Orleans Delivery Service was again incorrectly named. We will therefore amend the judgment to reflect the proper defendant, NOLA Delivery Service, Inc., and to cast its insurer, Liberty Mutual Insurance Company, in judgment.
[2] The 1983 revisions are applicable to this case.