618 So.2d 1199 (1993)
Alvin FIFFIE
v.
BORDEN, INC. and Insurance Company of North America.
No. 92-CA-1062.
Court of Appeal of Louisiana, Fifth Circuit.
May 12, 1993.
*1200 William R. Mustian, III, Stanga & Mustian, P.L.C., Metairie, for plaintiff-appellee Alvin Fiffie.
Brad C. Theard, Young, Richaud, Theard & Myers, New Orleans, for defendants-appellants Borden, Inc. and Ins. Co. of North America.
Before KLIEBERT, GRISBAUM and CANNELLA, JJ.
KLIEBERT, Chief Judge.
This worker's compensation case arises out of a job accident suffered by plaintiff-employee, Alvin Fiffie. Following trial on the merits, plaintiff was found temporarily totally disabled, and judgment was rendered in his favor and against his employer, Borden, Inc., and its worker's compensation insurer, Insurance Company of North America, collectively defendants. The judgment ordered reinstatement and continuation of the plaintiff's compensation benefits until his disability status changed, and further ordered the defendants to authorize an MRI study recommended by plaintiff's treating physician. Defendants appeal, maintaining that there was no causal connection between plaintiff's work accident and his disability, while plaintiff contends on appeal that the trial court erred in denying his claim against defendants for *1201 statutory penalties and attorney's fees. For the reasons hereafter stated, we affirm.
On October 7, 1988, plaintiff was employed by defendant Borden as assistant superintendent of the company's shipping department. He sustained injuries on that date while supervising the loading of a tractor-trailer. As the tractor-trailer was backing into a loading dock at the Borden plant in Metairie, the ramp on the rear of the trailer pinned plaintiff, at the waist, against the loading dock. Immediately after the accident, plaintiff was taken to East Jefferson General Hospital's emergency room where he was seen by Dr. John Cazale, an orthopedist. Preliminary x-rays disclosed a possible fracture of plaintiff's pelvis and Dr. Cazale ordered plaintiff admitted to the hospital for further evaluation and treatment. While hospitalized, plaintiff underwent a bone scan and a CAT scan of his lower back and pelvic regions. The bone scan, a more sensitive diagnostic procedure than the x-ray, indicated no fracture of plaintiff's lumbar spine or pelvis. The CAT scan, however, revealed degenerative changes in plaintiff's lumbar spine, subsequently diagnosed as the onset of arthritis. Plaintiff was treated with medication to relieve his back pain and was placed on physical therapy. The hospital discharged plaintiff on October 14, 1988 and sent him home to recuperate. At the time of his discharge, plaintiff was walking with the aid of a walker.
Plaintiff continued seeing Dr. Cazale after discharge from the hospital. On November 14, 1988, plaintiff reported to Dr. Cazale that his condition had improved somewhat, but that he was still experiencing back pain. Dr. Cazale continued plaintiff's physical therapy and instructed plaintiff to begin walking with a cane rather than the walker. Two weeks later Dr. Cazale directed plaintiff to start wearing a back support device after plaintiff complained of intermittent low back pain. Dr. Cazale also prescribed anti-inflammatory medication to relieve plaintiff's back pain. When Dr. Cazale saw him on January 2, 1989, plaintiff was walking without a cane, but still reported experiencing occasional back pain. Nevertheless, Dr. Cazale believed that he could release plaintiff back to work as of January 16, 1989. Plaintiff, however, felt that he was unable to return to work because of his continued back pain.
On January 9, 1989, plaintiff went to Dr. Verdie Zeringue, an orthopedist, to obtain a second opinion. X-rays taken on that date revealed what Dr. Zeringue characterized as moderate to severe degenerative arthritic changes in plaintiff's lower back. Dr. Zeringue recommended that plaintiff follow any instructions given by Dr. Cazale to return to work, but Dr. Zeringue also advised plaintiff to return for office visits as necessary. Plaintiff did not return to work. He continued seeing Dr. Zeringue on a regular basis until June 12, 1989, when Dr. Zeringue released plaintiff to return to work on an "as tolerated" basis. The range of motion in plaintiff's lower back was greater than 90% at the time Dr. Zeringue saw plaintiff on June 12, 1989.
Plaintiff attempted to return to work in late June of 1989, but his former position with Borden had been eliminated in a corporate restructuring. In place of that position, plaintiff was offered a lower classification job as a truck driver which entailed not only driving but also loading and unloading heavy containers of dairy products. After plaintiff expressed concern that he could not fully perform such manual labor, a Borden representative advised him to take the early retirement for which he qualified, and plaintiff complied with that advice.
Plaintiff returned to Dr. Zeringue on November 17, 1989, complaining of increased back pain and the inability to sit very long. The range of motion in plaintiff's lower back at that time was reduced to 75% and Dr. Zeringue noted that plaintiff's condition had become worse. Dr. Zeringue continued seeing plaintiff through the time of the trial. On August 7, 1991, two weeks before the trial, Dr. Zeringue examined plaintiff and found that the range of motion in plaintiff's lower back was still only 75% and that plaintiff experienced back pain within that range of motion, as well as occasional numbness in his lower extremities.
*1202 Dr. Zeringue suspected that plaintiff's pain was caused by a bulging disc. He therefore ordered an MRI study of plaintiff's lumbar spine to be done as soon as defendants authorized the study under Borden's worker's compensation coverage. That MRI study had not been authorized or performed prior to trial.
The trial court found that plaintiff was temporarily totally disabled and accordingly awarded reinstatement and continuation of plaintiff's worker's compensation benefits from November 1989 until his status changed.[1] The court additionally ordered the defendants to authorize the MRI study of plaintiff's lower back as recommended by Dr. Zeringue. Defendants maintain that plaintiff is not entitled to the compensation benefits awarded by the trial court because his disability resulted from a degenerative condition and was not causally related to his work-accident on October 7, 1988.
The plaintiff-employee in a worker's compensation case has the burden of proving by a preponderance of the evidence his disability and the causal relation between it and a work-accident. Lemoine v. Parish Tire & Wheel, 532 So.2d 911 (5th Cir.1988), writ denied, 535 So.2d 743 (La. 1989). An employee's pre-existing disease or infirmity, such as plaintiff's arthritic condition in this case, does not disqualify a worker's compensation claim, if the work injury aggravated, accelerated or combined with the disease or infirmity to produce the death or disability for which compensation is claimed. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985); Tassin v. New Orleans Delivery Service, 550 So.2d 1214 (5th Cir.1989). A work injury is presumed to have aggravated, accelerated, or combined with an employee's pre-existing disease or infirmity to produce a disability when the employee proves that (1) the disability symptoms had not manifested themselves before the work-accident, (2) commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and (3) there is medical or circumstantial evidence indicating a reasonable possibility of causal connection between the work-accident and the activation of the disabling condition. Walton, supra, at 324-325. Once this presumption of a causal relationship between the disability and the work injury is established, the party seeking to rebut that presumption assumes both the burden of producing evidence and the burden of persuasion on the issue. To prevail on the issue, the party attempting to rebut the presumption of a causal relationship must produce evidence and persuade the trier of fact that it is more probable than not that the work-accident did not accelerate, aggravate, or combine with the pre-existing disease or infirmity to produce the disability. Walton, supra, at 325.
In this case, plaintiff testified that, despite his arthritic condition, he had no back problems prior to his work-accident on October 7, 1988. When the accident occurred, plaintiff had been employed by defendant Borden for more than thirty years and had never once complained of a back problem. Plaintiff's wife and daughter also testified that he had never experienced back problems before his work-accident. The trial judge stated in her written reasons for judgment that "[T]here was nothing to indicate that the plaintiff had ever suffered back problems prior to October 7, 1988."
The testimony of Doctors Cazale and Zeringue was presented by deposition at trial. Each of these physicians described plaintiff's degenerative arthritis as a condition of the lower back which could remain dormant and without symptoms, until aggravated by some traumatic event. Dr. Cazale stated his opinion that the October 7, 1988 work-accident caused the arthritis to become symptomatic. Dr. Zeringue testified that the work-accident was the type of traumatic event which could result in plaintiff's arthritic condition becoming symptomatic, and he further expressed his belief that a bulging disc might be the cause of plaintiff's increasingly severe lower back pain. Responding to a question by counsel *1203 for the defendants, Dr. Zeringue testified that a bulging disc, if plaintiff is determined to have one, "may be related" to the October 7, 1988 work-accident.
After considering the foregoing evidence, the trial court concluded that plaintiff's disability as of November 1989 was causally related to his work-accident. The trial judge noted in her reasons for judgment that defendants "... offered no evidence to persuade this Court that it is more probable than not that the work-injury did not accelerate, aggravate or combine with the pre-existing disease or infirmity to produce plaintiff's disability." In the trial judge's opinion, the defendants failed to carry their burden of persuasion once plaintiff established a causal relationship between the disability and the October 7, 1988 work-accident.
On appeal the factual findings of a trial court are not disturbed unless manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). However, defendants contend that the manifest error standard does not apply for our review of the medical testimony in this case because the testimony of Doctors Cazale and Zeringue was presented at trial in the form of depositions. Defendants urge that deposition testimony is to be reviewed based on the sufficiency and preponderance of the evidence, citing as authority Dickerson v. Zurich-American Ins. Co., 479 So.2d 571 (1st Cir.1985) and Bankston v. Gregory and Cook, Inc., 506 So.2d 820 (1st Cir.1987). The Louisiana Supreme Court has nevertheless ruled that the manifest error standard of review is applicable even to deposition testimony. Virgil v. American Guarantee and Liability Ins. Co., 507 So.2d 825 (La.1987).[2] We therefore adhere to the manifest error standard in our review of the factual conclusion reached by the trial court.
Based on our review of the evidence, we find no manifest error in the trial judge's finding of a causal relation between plaintiff's disability and his work-accident of October 7, 1988. We conclude, as did the trial judge, that the testimony of the witnesses, both lay and medical, established a presumption of a causal relation between plaintiff's disability and the October 7, 1988 work accident, and that defendants failed in their burden of rebutting that presumption. Walton, supra; Tassin, supra. Hence, we see no error in the trial court's ruling awarding plaintiff reinstatement of his worker's compensation benefits retroactive to November 1989, and ordering those benefits continued until plaintiff's disability status changed, and further directing defendants to authorize the MRI study of plaintiff's lower back as recommended by Dr. Zeringue.
We now turn to plaintiff's contention that the trial court erred in denying his claim for statutory penalties and attorney's fees against defendants. Whether a refusal to pay worker's compensation benefits is arbitrary, capricious and without probable cause depends on facts known to the insured at the time of the refusal and the trial court's factual determination of what the defendants knew will not be disturbed on appeal absent manifest error. Scott v. Insurance Company of North America, 485 So.2d 50 (La.1986).
In our view the trial court committed no manifest error in finding that the defendants' refusal to pay benefits in this case was not arbitrary, capricious and without probable cause. Defendants' decision to refuse to pay benefits relied heavily on the fact that both Dr. Cazale and Dr. Zeringue discharged plaintiff to return to work in June of 1989, and the fact that five months lapsed before plaintiff returned to Dr. Zeringue with complaints of back pain. We agree with the trial court's conclusion that, while such evidence does not defeat *1204 plaintiff's disability claim, defendants' actions in refusing to pay benefits were not totally unjustified. The trial court therefore correctly denied plaintiff's claim for statutory penalties and attorney's fees.
Accordingly, the judgment of the trial court is affirmed. Costs of the appeal are to be borne by defendants.
AFFIRMED.
NOTES
[1] At trial, the parties stipulated that the rate of plaintiff's weekly benefit payment for this incident was $259.81, which was last paid to plaintiff on June 13, 1989.
[2] The standard of review announced in Dickerson, supra, for deposition testimony presented at trial was specifically rejected in Mazoch v. Employers Cas. Co., 514 So.2d 1184, 1185 (1st Cir.1987), writ denied, 517 So.2d 812 (La.1988), and the appellate court in Delahoussaye v. State Farm M. Auto. Ins., 520 So.2d 891, 893 (3rd Cir.1987), writ denied, 522 So.2d 561 (La.1987) stated that Bankston, supra, was effectively overruled by the Louisiana Supreme Court's decision in Virgil, supra.