CANNELLA, Judge.
Defendant, Schwegmann’s Super Market, Inc. (Sehwegmann), appeals from a judgment which found plaintiff, Roy W. Cowans (Co-wans), temporarily totally disabled from a job related injury on September 10, 1984. We affirm, finding that the trial judge was not manifestly erroneous.
In August of 1984, Cowans, a meat cutter at one of defendants’s groceries, injured his back when he attempted to bend over and pick up a box of meat. He was seen by the company doctor who, after examination, sent him back to work on light-duty, only. He was unable to tolerate work due to pain, so was sent home and placed on bed-rest and referred to physical therapy, returning to work approximately one week later. While attempting to load some meat boxes on a cart, he experienced another onset of severe pain, was examined once more by a physician, given analgesics and sent to physical therapy. After one month with no improvement, he was referred to East Jefferson General Hospital where he was informed that he had a slipped disc.
Cowans was referred to Dr. Richard Co-rales on October 15,1984. After examination and testing, Dr. Corales performed a disckec-tomy at the L-5, S-5 level on October 23, 1984. Cowans noted some relief initially, but his condition worsened resulting in a second surgery in April of 1985. At that time, several disc fragments were removed and a lumbar laminectomy was performed. Thereafter, he experienced some improvement and was more tolerant to ambulation.
Over the next several years, Cowans’ condition did not significantly improve. He continued to suffer debilitating pain intermittently, upon attempted physical activities, which resulted in the onset of depression and sexual dysfunction. He remained under the *756 care of various physicians at various times, including those involved in a pain program at Hotel Dieu Hospital, those involved in a work-hardening program at East Jefferson General Hospital and those who treated him at the rehabilitation department at F. Edward Hebert Hospital. During this period of time, from 1984 until 1988, he was not released for any type of work, although efforts were being made to improve his condition so that he could return to some type of light employment.
On May 11,1988,[1] Cowans was shopping at a local Wal-Mart store when he slipped on a small ball on the floor. In an effort to keep from falling, he grabbed the shopping cart, twisting his back in the process. He reported the incident to the store manager and went to the emergency room at St. Jude Hospital in Kenner, Louisiana. Cowans was then referred to Dr. Vaclav Hamsa because of increased pain in his back. Dr. Hamsa reviewed the his history and discussed the case with Dr. Corales. After a C-T scan and lumbar myelogram, Dr. Hamsa determined that Cowans suffered a new ruptured disc at the L^4, L-5 level. Because of his depressed state due to the continuing pain and incapacity, it was felt he was not a candidate for further surgery. However, Dr. Hamsa believed that Cowans was a candidate for a chemical procedure, chemonucleolysis. Therein, a dissolving chemical is introduced into the disc which reheves pressure on the nerve. Due to his financial condition, this procedure was not done prior to trial.
As a result of the accident at Schweg-mann’s on September 10, 1984, Cowans filed suit on September 1, 1985 for workers compensation benefits. He received benefits until May 12, 1991 when Schwegmann discontinued them because it believed his inability to return to work was due to the intervening accident at Wal-Mart in 1988. A judge trial on the workers compensation action was held on July 20, 1992. After reviewing the deposition testimony of the various physicians, the medical reports, the testimony of Cowans, his wife, his son and his niece, the trial judge, by judgment dated February 19, 1993, determined that Cowans was temporarily totally disabled due to the work related “accident in 1984.” The trial judge rejected Schweg-mann’s contention that the subsequent accident at Wal-Mart caused his disability.
On appeal, Schwegmann asserts first that the trial judge erred in holding Cowans was temporarily disabled under the Workers Compensation Act because the evidence shows that he was able to return to gainful employment prior to the accident at Wal-Mart. Second, it contends that the trial judge erred in failing to consider the testimony of Dr. Hamsa who clearly éstablished that Cowans suffered a new and different injury in the Wal-Mart accident.
In regard to the first issue, Schweg-mann argues that Cowans failed to prove that he is entitled to temporary and total benefits as a sole result of the work related accident under La.R.S. 23:1221 because under La.R.S. 23:1221, in order for an employee to receive benefits, he must prove he is unable to engage in any self-employment or gainful occupation for wages, whether or not the same or similar to that in which he was customarily employed when injured. Schwegmann asserts that the medical evidence shows that Cowans was in fact actively looking for a job at the time the second accident occurred. Thus, Cowans failed to carry his burden of proof.
La.R.S. 23:1221, in effect on the date of the injury, provided:
For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
*757 The evidence in this case shows that Co-wans, now 42 years old, is married with one adult son, has a sixth grade education and no other formal training. For most of his working life, he has been a meat cutter, although at times he worked as a burner at a metal company, a dragline helper, a laborer, an electrician’s helper, a used auto parts salvager, a tow truck driver and a door repairman. He was physically active prior to 1984, but no longer participates in fishing, hunting, ball playing, swimming, horseback riding and handling a pony and cart.
The medical evidence shows that he followed all of the treatment recommendations of the treating physicians and the rehabilitation specialists. While he was seen and treated by a number of doctors, the main treatment was provided by Dr. Corales, the neurosurgeon who operated on him in 1984 and 1985, Dr. Alvin Darby who supervised his rehabilitation program from 1987 until 1991, and Dr. Hamsa, the orthopedic surgeon who treated him after the Wal-Mart accident. Each physician testified by deposition and all of Cowans’ medical, rehabilitation and vocational reports were introduced into evidence.
Dr. Corales testified that after the second surgery, Cowans did not recover satisfactorily and that it was frustrating from his point of view that he could not do anything to alleviate his pain and incapacity. He testified that Cowans continued to suffer with activity, but, because of his depressed state, was not a candidate for further surgery. He hoped that the work-hardening program and later the rehabilitation program with Dr. Darby and his group would result in his ultimate ability to return to some type of work, but at no time was he considered able to return to work while under his care. He noted that Cowans was sent to a pain clinic, but was unable to continue, apparently because he became too anxious.
Dr. Corales did not see Cowans after the Wal-Mart accident because he believed that Cowans felt that he was unable to help him farther. However, Dr. Corales reviewed the medical reports from the rehabilitation doctor, Dr. Darby, the mylograms and C-T scans relied on by Dr. Hamsa after the second accident, and found no significant changes in Cowans complaints. He also specifically testified that Cowans was “not significantly more functional in 1988 than he was in 1985”, when he last saw him. According to Dr. Corales, Cowans reached maximum medical improvement in 1985 and his opinion did not change after reviewing the records of his progress before and after the Wal-Mart accident. He noted that, even after treatment by the rehabilitation group, Cowans was no better than when he started in 1986. Dr. Corales reviewed the tests performed by Dr. Hamsa. He concluded that there was no new disc involvement, contrary to Dr. Hamsa’s opinion.
The trial judge also relied on the medical reports of the rehabilitation group who was treating Cowans up to and after the second accident in 1988. Those reports began with Dr. Robert Halvorsen, continue with Dr. Stuart Miller and ended with Dr. Darby. Dr. Halvorsen agrees with Dr. Corales when he reported in 1986 that Cowans “is not ready to return to work at this time”. Dr. Miller took over the care of Cowans in September of 1986 and noted that he is able to work with restrictions related to bending, stooping, lifting, and sitting and standing for long periods of time. He then referred him to vocational rehabilitation.
Charles Paskut evaluated Cowans for vocational rehabilitation. In December of 1987, he recommended that Cowans not return to work as a butcher or any employment which would subject him to cold or actions from which he is restricted. He stated further that there was “questionable prognosis for success even with no dysfunction”, which may have been based on earlier evaluations that Cowans is not a likely candidate for formal retraining of any kind.
Dr. Darby took over the rehabilitation of Cowans on March 24,1987. Correspondence from him dated November 23,1987 indicated that he was not able to be employed since November of 1985 and had remained “... unfit for meaningful employment since the onset of the symptoms”. None of Dr. Darby’s later reports or testimony indicate that Cowans’ condition changed to allow him to return to work. In July of 1988, he noted *758 that Cowans stated that his symptoms became worse following a six week work-hardening program at East Jefferson General Hospital in March of 1988. He concluded that the work-hardening program exacerbated his “chronic low back pain/failed disc syndrome”.
There are no reports which indicate that Cowans was able to return to any type of employment prior to the 1988 accident. All reports indicate that he continued to suffer pain intolerance to physical activity.
Dr. Hamsa first saw Cowans after, and as a result of, the accident at Wal-Mart on May 11, 1988. After testing, he concluded that Cowans suffered a new injury to the L-4, L-5 portion of his back. In his notes and testimony, Cowans acknowledged that he had been doing well and was actively seeking employment when he injured himself at the Wal-Mart store. However, it soon became clear that Cowans was in distress again and unable to engage in any type of physical activity. Dr. Hamsa believed this impairment to be a result of the new injury, but noted that Cowans was predisposed from the prior surgeries which caused degenerative changes in Cowans’ back. Dr. Hamsa spoke with Dr. Corales and agreed that Cowans was not a good candidate for another surgery. He recommended chemonucleolysis treatment, which was never done because of plaintiffs financial problems. After the last visit in 1990, Dr. Hamsa did not believe that Cowans could return to an eight-hour per day job and that he was totally disabled. He related this to the Wal-Mart accident since he believed that, prior to the second incident, Cowans was in the process of returning to some type of work.
Schwegmann asserts that, although Co-wans suffered continued problems, the physicians all, at one point or another, testified that he could return to some type of employment with restrictions. It states that even Cowans testified that he was attempting to find work through the vocational rehabilitation program when the Wal-Mart incident occurred. Cowans, on the other hand, contends that the evidence shows that he was never able to return to work and that once he has shown an inability to work, the burden of showing that there are jobs in the area which he can do within his medical restrictions falls on Schwegmann. In this ease, Cowans asserts that Schwegmann has failed to meet that burden.
The jobs listed from a survey done by Schwegmann that it claims Cowans can do and are available in the area are meat inspector, copy technician, veterinarian’s assistant, order puller, sandwich maker, service writer, car wash ticket writer and bakery helper. However, the evidence showed, upon questioning, that these positions do not meet the restrictions placed on Cowans for limited sitting, bending, standing or stooping.
In reviewing factual findings of a trial judge in a workers compensation case, the appellate court is limited by a review for manifest error. See: Fiffie v. Borden, Inc., 618 So.2d 1199 (La.App. 5th Cir.1993).
The evidence shows that, while the doctors at times noted possibilities in relation to Co-wans’ ability to work, we find the comments are not definite as to this issue because he continued to become worse after the physical activity designed to get him to a state where he could begin searching for employment. The focus of the treatments and referrals to the rehabilitation programs was to get him to a stage where he could work. However, this level of progress was never attained before the accident at Wal-Mart. Furthermore, we recognize that Cowans wanted to and still wants to return to work and that he made efforts in this direction by applying for a few jobs prior to the accident. However, we do not find that those unsuccessful attempts prove that he was able to return to work. This shows only that he tried to follow the recommendations of the medical personnel supervising his recovery efforts. Based on these facts, we cannot say that the trial judge erred in finding that Cowans was unable to return to work prior to the Wal-Mart accident.
Schwegmann also asserts that the trial judge erred in not considering the testimony of Dr. Hamsa that the Wal-Mart accident caused a new lesion which was responsible for Cowans’ inability to work. However, our review has resulted in the conclusion that *759 Cowans was, more probable than not, unable to return to any type of work prior to the accident. Even if he has a new and different lesion at L-4, L-5, this new injury is not the cause of his inability to work. Rather, the evidence shows that the cause was the accident at Sehwegmann in 1984.
Finally, Sehwegmann argues that Cowans was actively seeking employment prior to the accident and that he agreed to accept employment by letter to Schwegmann’s attorney in 1992 with the proviso that he be guaranteed a five-year contract of employment. Sehwegmann contends that this letter, along with the jobs found available for him, shows that he is not temporarily and totally disabled under the workers compensation statute. We disagree. Cowans has continuously exhibited a cooperative attitude and willingness to return to work. However, both the medical reports and rehabilitation evaluations show, for the most part, that he is not able to return to employment at this time. Furthermore, the jobs listed by Sehwegmann were shown to be inadequate since they involve physical movements that he cannot perform.
After reviewing all of the evidence in this ease, we find that the trial court did not commit manifest error in determining that Cowans is temporarily and totally disabled. We further find that the trial judge did not err in concluding that the disability resulted from the work related accident in 1984. Thus, we affirm the judgment of the trial court awarding plaintiff benefits and medical payments for disability under La.R.S. 23:1221(1).
Accordingly, the judgment of the trial court is hereby affirmed.
Costs of this appeal are to be paid by Sehwegmann.

AFFIRMED.

. In her reasons for judgment, the trial judge gave the date of the Wal-Mart accident as May 19, 1988. The transcript at page 191, emergency room report and medical depositions give the date as May 11, 1988. This court finds that the Wal-Mart accident occurred on May 11, 1988 and that the trial court error is harmless.